**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ERIC FREELAND, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>    **-against-**<br><br>**FINDLAY's TALL TIMBERS DISTRIBUTION CENTER D/B/A/ OHIO LOGISTICS,**<br><br>          **Defendant.** | **No. 22 Civ. 6415 (FPG)** |

**<u>MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................ 1

LEGAL STANDARD ........................................................................... 2

ARGUMENT ...................................................................................... 3

   I. A PRIVATE RIGHT OF ACTION EXISTS FOR VIOLATIONS OF NYLL § 191 ..... 3

      A.   The Vega Decision Controls This Matter. ...................................... 3

      B.   Defendant's Attempt To Frame The Legislative History Ignores Consistent New York Precedent ...................................................... 4

      C.   Defendant's Absurdity Argument Misses the Mark ........................ 6

      D.   Plaintiff Has Successfully Alleged that he is a Manual Worker ...... 8

  II.   DEFENDANT'S NYLL VIOLATIONS INJURED PLAINTIFF ............................ 9

      A.   Delay in Payment Causes Injury ................................................... 9

      i.   *Delay In Payment Is a Historical Article III Injury* ...................... 12

      ii.   *Allegations that an employer violated the timely pay requirements of the NYLL is sufficient to establish Article III standing.* .................. 14

      iii.   *Courts have similarly accepted allegations of an untimely payment under the FLSA as enough to establish Article III standing.* ........... 16

      B.   A Violation of NYLL § 191(1)(a) Constitutes Underpayment ....... 17

      C.   Defendant's Constitutional Argument Is Not Appropriate at This Time ........................................................................................... 19

  III.   PLAINTIFF HAS ADEQUATELY ALLEGED AN OVERTIME CLAIM ........... 19

  IV.   PLAINTIFF HAS STANDING FOR HIS CLAIMS UNDER NYLL § 195(3) .................................................................................................... 21

  V.   THE CLASS PERIOD SHOULD NOT BE LIMITED TO PLAINTIFF'S EMPLOYMENT DATES .................................................................. 22

CONCLUSION ................................................................................. 24

## PRELIMINARY STATEMENT

Plaintiff Eric Freeland worked as an hourly worker for Defendant Findlay's Tall Timbers Distribution Center, LLC ("Defendant" or "FTTDC") in New York. Plaintiff alleges that Defendant's pay scheme violated both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL")

Defendant moves to dismiss Plaintiff's class action complaint based on lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) and for failure to state a claim pursuant to FRCP Rule 12(b)(6). However, Defendant's motion rests on erroneous and inappropriate arguments. First, Defendant attacks Plaintiff's claim under NYLL § 191(1)(a), repeating the same arguments regarding the availability of a private right of action that have been denied by **every single Court in the Second Circuit**. *See* **Exhibit A**, List of Cases Denying Motions to Dismiss NYLL § 191 claims. Defendant does not, and cannot explain why this Court should depart not only from these decisions, but from crystal clear precedent from the Supreme Court and the Second Circuit to follow the decisions of an intermediate appellate court on questions of State Law. *See DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005)) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)

Moreover, Defendant's argument that a Plaintiff does not have standing to bring claims under NYLL § 191 is made in contravention of the holdings of the Supreme Court, the Circuit Courts, and the District Courts in the Second Circuit. Again, Defendant refuses to grapple with these holdings, and cannot explain why this Court should depart from well-established legal principles. Defendant's further arguments regarding policy sidestep or ignore multiple holdings of New York's Appellate Courts. While Defendant may not see the issue with denying their workers

their right to receive their pay on time, that does not mean they should be allowed to disregard the law at the expense of their employees.

Defendant also argues that Plaintiff has not alleged plausible overtime claims stemming from Defendant's failure to factor in non-discretionary bonuses into Plaintiff's overtime rate. However, Defendant's arguments on this point are merits-based and miss the mark regarding what Plaintiff has alleged. Finally, with respect to Plaintiff's NYLL § 195(3) claim, Defendant ignores that Plaintiff has alleged specific downstream consequences that have harmed Plaintiff.

As discussed herein, Defendant's arguments fail and Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

## LEGAL STANDARD

Under Rule 12(b)(1), a case may be properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where Article III standing is at issue, a plaintiff must show "(1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *See Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (internal quotation marks omitted)). The Supreme Court has "recognized that physical and monetary harms, along with other traditional tangible harms, readily qualify as concrete, and that certain intangible harms, such as reputational harm, qualify as well." *Maddox*, 19 F.4th at 63 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)). The Second Circuit described the injury in fact requirement as "a low threshold[.]" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Moreover, where a plaintiff can establish standing for an "informational injury" if the plaintiff can allege "downstream consequences from failing to receive the required

information." *See Harty v. West Point Realty, Inc.*, No. 28 F. 4th 435, 444 (2d. Cir. 2022) (citing *TransUnion*, 141 S. Ct. at 2214).

When evaluating a defendant's motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018). To survive a 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Campos v. Aegis Realty Management Corp.*, No. 19 Civ. 2856 (KPF), 2020 WL 433356, at *3 (S.D.N.Y. Jan. 28, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.   A PRIVATE RIGHT OF ACTION EXISTS FOR VIOLATIONS OF NYLL § 191

Whether or not NYLL § 191 contains a private right of action is purely a question of state law. Where there is no direct ruling from the Court of Appeals on state law, federal courts follow the rulings of the state appellate courts. *See DiBella,* 403 F.3d at  112 (citing *West,* 311 U.S. at 237); *see also Mabe v. Walmart Assocs., Inc.,* No. 20 Civ. 591, 2022 WL 87311 at *3 (N.D.N.Y. Mar. 24, 2022) ("we are generally obliged to follow the state law decisions of state intermediate appellate courts").

#### A.   <u>The Vega Decision Controls This Matter.</u>

The only on point appellate court rulings regarding a private right of action under NYLL § 191(a)(1) are *Vega* and *Max Finkelstein*. *See Caul* v. *Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *2-3 (E.D.N.Y. Sept. 27, 2021) ("*Caul* Order I") (finding that *Vega* was the only state appellate court ruling regarding NYLL § 191); *Phillips v. Max Finkelstein, Inc.*, Index No. 2020/542SC, 2021 WL 4075089, at *1 (N.Y. Sup. Ct. App. Term

Aug. 26, 2021) (Second Department appellate term finding that a private right of action exists to enforce rights established under NYLL § 191); *see also* **Exhibit A**.

Defendant lodges the unsupported complaint that *Vega*, was "incorrectly decided," and that the Court should "depart" from its reasoning. To begin, this argument runs contrary to Supreme Court and Second Circuit precedent. *See DiBella*, 403 F.3d at 112, (quoting *Am. Tel. & Tel. Co.,* 311 U.S. at 237 ("rulings from [state intermediate appellate courts] are a basis for 'ascertaining state law which **is not to be disregarded** by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). Defendant relies solely on a misguided framing of the legislative history, policy arguments, and cases which predate *Vega*. As explained by Judge Failla, this does not clear that high bar set by *Dibella*:

> "[d]efendants have presented no persuasive reason why this Court should depart from the myriad [of] decisions in this Circuit that have followed Vega in finding a private right of action to enforce Section 191. **Rather, [d]efendants attack the reasoning of *Vega*, relying exclusively on pre-Vega decisions** that do not indicate to the Court that the New York Court of Appeals is poised to revisit the First Department's decision...Because [d]efendants offer no 'persuasive evidence that the state's highest court would reach a different conclusion' than the First Department did in *Vega*, the Court is 'bound to apply the law as interpreted by' the intermediate appellate court.

*See Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2022 WL 3285275, at *11 (S.D.N.Y. Aug. 10, 2022) (citing *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010); *Pahuta v. MasseyFerguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)); *see also Levy v. Endeavor Air.*, No. 21 Civ. 4387 (ENV) (JRC), 2022 WL 16645829, at *5 (Nov. 1, 2022) ("every court in this Circuit to consider [*Vega*] has followed its construction of the [NYLL]").

### B. Defendant's Attempt To Frame The Legislative History Ignores Consistent New York Precedent

Defendant fails to address that prior to the *Vega* decision, multiple New York Appellate Courts assed matters arising from alleged violations of NYLL § 191. In *Bynog v. Cipriani Group,*

*Inc.*, the First Department explicitly reinstated a NYLL § 191 claim on behalf of plaintiffs whom the trial court had found to be independent contractors. *See* 298 A.D. 2d 164 (1st Dept. 2002). While the Court of Appeals reversed the order after review of the record, it never once suggested that there was no right to bring NYLL § 191 claims. *See* 1 N.Y. 3d 193 (2003); *see also Scott*, 2019 WL 1559424 at *2 ("neither the Second Department nor the Court of Appeals suggested, let alone held, that the plaintiffs did not have a right to bring a claim under [NYLL § 191]). The Second Department also reinstated NYLL § 191 claims before the *Vega* decision. *See Cohen v. Finz & Finz, P.C.*, 131 A.D. 3d 666 (2nd Dept. 2015) (reversing decision to dismiss NYLL § 191 claims against individual defendants).

Moreover, in *Gottlieb v. Kenneth D. Laub & Co.*, the Court of Appeals plainly stated that NYLL § 191 "generally regulates payment of wages by employers and creates reciprocal rights of employees." *See* 82 N.Y.2d 457, 461 (1993); *see also Konkur v. Utica Academy of Science Charter School*, 38 N.Y. 38, 44 (2022 ("it is Labor Law § 191 that generally regulates payment of wages by employers and creates reciprocal rights of employees) (internal quotations omitted). Frankly, Defendant completely ignores that the Court of Appeals has directly ruled that in enacting New York Labor Law 191, the legislature identified manual workers as those "dependent on their wages for sustenance." *See Vetri*, 309 N.Y. at 405. In fact, Defendant's motion is devoid of any reference to New York's Court of Appeals multiple decisions regarding NYLL § 191.

Defendant seeks cover for their position in *Konkur*, yet multiple courts have directly found that the *Konkur* decision has no bearing on *Vega* nor NYLL § 191. Judge Seybert recently denied a similar argument, stating:

> "[t]he Court is unconvinced by [d]efendant's argument that the Court of Appeals' decision in *Konkur* 'cannot be readily reconciled with' with the First Department's holdings in *Vega*. In fact, several district courts within this Circuit have already analyzed this issue and all have concurred that *Konkur* does not affect the core holding of *Vega*…Most importantly, *Vega* held that the NYLL expressly provided

for a private right of action to enforce NYLL § 191(1)(a) in § 198(1-a), which contemplates an action instituted in the courts upon a wage claim by an employee. Nothing in *Konkur* undermines this statutory interpretation, because *Konkur* addresses an implied cause of action." (internal citations omitted)). This weight of authority persuades the Court that *Konkur* does not preclude [p]laintiffs' claim."

*See Rosario v. Icon Burger,* No. 21 Civ. 4313, (JS) (ST), 2022 WL 17553319 at \*5 (E.D.N.Y. Dec. 9, 2022); *see also Mabe*, 2022 WL 874311, at \*6-7 ("*Konkur* does not directly contradict the *Vega* Court's determination … [*Konkur's* reasoning] is similar to the *Vega* Court's reasoning"); *Elhassa v. Hallmark Aviation Services, L.P.*, No. 21 Civ. 9768 (LJL), 2022 WL 563264, at \*2 ("the question in *Konkur* had to do with the implication of a private right of action for a different provision of the NYLL. *Vega* rested on a different ground"). If there is any stance on NYLL § 191 taken from the *Konkur* decision, it lends support to Plaintiff's claim under NYLL § 191. *See Konkur,* 38 N.Y. at 44 ("it is Labor Law § 191 that generally regulates payment of wages by employers and **creates reciprocal rights of employees**") (emphasis added).

### C.  Defendant's Absurdity Argument Misses the Mark

Defendant argues that a private right of action under NYLL § 191 is "absurd" and must be avoided by the Court. *See* ECF No. 8-4, pgs.11-13. This argument is based on a misunderstanding of NYLL § 198, and the purpose of NYLL § 191. Nowhere is Defendant's mistaken interpretation of the NYLL better exemplified than in footnote 5 of Defendant's memorandum of law, where Defendant argues that there are "significant differences between the NYLL and FLSA." *See* ECF No. 8-4, pg. 13.

Defendant's argument here conflicts with Second Circuit precedent. *See Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018) (finding that there are "no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL); *see also Rodrigue v. Lowe's Home Centers, LLC*, No. 20 Civ. 1127 (RPK) (RLM), 2021 WL 3948268, at \*5 (E.D.N.Y. Aug. 27, 2021) ("[defendants] do not explain why the New York Court of Appeals would give a

substantially narrower reading to [NYLL § 198] than the Supreme Court gave to the section's federal counterpart"). In fact, the Second Circuit has directly stated that the liquidated damage provisions of NYLL § 198 was to "deter wage-and-hour violations in a manner calculated to compensate the party harmed" and it is "is clear that the New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA." *See Rana,* 887 F.3d at 123 (internal quotations omitted).

It is far from absurd that NYLL provides for recovery of the liquidated damages in the case of the delayed payment of wages, because this is exactly why the FLSA imposes liquidated damages:

> "[Liquidated Damages] constitutes a Congressional recognition **that failure to pay the statutory minimum on time** may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, **that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being**"

*See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945) (emphasis added); *see also Rodrigue,* 2021 WL 3848268, at *5 ("under a similarly worded provision in [FLSA], an employee may recover liquidated damages regardless of whether an employee has been paid wages owed before the commencement of the action).

It is instead Defendant's preferred reading of the statute that leads to absurd results, because the logical conclusion of Defendant's understanding would be that an employer could avoid paying any wages due until the exact second before an employee files a complaint, be it months or years, and the employee would have no right to recover anything.[1] This would clearly be in direct

---

[1] Defendants' argument that the New York Department of Labor does not enforce violations of NYLL § 191 with liquidated damages based on an online form is simply incorrect. *See* **Exhibit B**, Enforcement Emails from the New York Department of Labor. Respectfully, this exact argument was raised by the Defendant in *Mabe* and it was not considered by the Court. *See Mabe v. Walmart Assoc., Inc.*, No. 20 Civ. 591 (TJM) (CFH), ECF No. 25, pg. 7 (May 12, 2021).

7

contravention of the fundamental purpose of NYLL § 191, which is to ensure such late payments

do not occur. Thus, Defendant's argument in this regard must fail.

### D.  Plaintiff Has Successfully Alleged that he is a Manual Worker

The New York Department of Labor has consistently opined that a manual worker as

contemplated by NYLL § 191 is any worker who spends more than 25% of his/her time performing

"physical labor." *See* N.Y. Dep't of Labor Counsel Opinion Letter RO-08-0061. This definition

has been adopted by Courts in this Circuit.

> "under NYLL § 190(4), "manual worker" means "a mechanic, workingman or laborer."
> **More helpfully, the New York Department of Labor has long interpreted the term to**
> **include "employees who spend more than 25 percent of their working time**
> **performing physical labor."** N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May
> 21, 2009). By this criterion, carpentry workers, cooks, wait staff, grocery store employees,
> janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be
> "manual workers."

*See Beh v. Cmty. Care Companions Inc.*, No. 19 Civ. 1417 (JLS)(HBS), 2021 WL 3914297, at *3

(W.D.N.Y. Feb. 1, 2021) (emphasis added), (citing *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18

Civ. 86, 2019 WL 1559424, at *1-2 (E.D.N.Y. Apr. 9, 2019); *Gonzalez v. Gan Israel Pre-School*,

No. 12 Civ. 6304, 2014 WL 1011070, at *12-13 (E.D.N.Y. Mar. 14, 2014); *Lopez-Martinez v.*

*Gokul Inc. of N.Y.*, No. 13 Civ. 467, 2013 WL 6145795, at *1 (N.D.N.Y. Nov. 21, 2013); *Cuzco*

*v. Orion Builders, Inc.*, No. 06 Civ. 2789, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010);

N.Y. Dep't of Labor Opinion Letter, No. RO-07-0072 (July 11, 2007); N.Y. Dep't of Labor Opinion

Letter, No. RO-08-0061 (Dec. 4, 2008); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482

(S.D.N.Y. 2012). Moreover, an employee's status as a manual worker is not determined by their

title, but rather their duties on a case-by-case basis. *See Gonzales,* 2014 WL 1011070, at *12

(finding that plaintiff was a manual worker due to her janitorial duties, including cleaning).

Plaintiff clearly articulates the manual work that Defendant required him to do for over

twenty-five percent of his working hours. *See* Cmpl. ¶ 58 ("over twenty-five percent of Freeland's

duties were physical tasks, including but not limited to: (1) lifting and carrying equipment and freight up to fifty pounds; (2) operating heavy machinery; (3) breaking down ceramic parts by hand; and (4) standing for long periods of time"). This is far from a bare legal conclusion, as Plaintiff instead describes the exact facts of his work day and the tasks he was generally assigned. Certainly, New York's First Department has found that this is more than enough to sufficiently plead an employee is a manual worker. *See Kirby v. Carlo's Bakery 42nd & 8th LLC*, 179 N.Y.S. 3d 578, 579 (N.Y. 1st Department 2023) ("Plaintiff's claim based on defendants' failure to pay her weekly also is sufficiently pleaded… she stated that she was responsible for opening and closing the store, sorting and moving inventory, cleaning the store, and waiting on customers – and stating that she spent more than 25% of her working time performing physical labor"). To the extent Defendant's disagree with the nature of Plaintiff's work, this is solely a merits-based argument that is not appropriate to contemplate until after discovery.

## II.  DEFENDANT'S NYLL VIOLATIONS INJURED PLAINTIFF

### A.  <u>Delay in Payment Causes Injury</u>

Multiple courts that have directly weighed whether the harm caused by a violation of NYLL § 191 confers Article III standing and reached the same affirmative conclusion. *See e.g Gillett* 2022 WL 3285275, at *6 ("[i]rrespective of the fact that the plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III"); ("*Caul* Order I"), motion to certify appeal denied, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) ("*Caul* Order II") (citing *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing"); **Exhibit A**.

These on point rulings combined with years of clear precedent shows one inescapable conclusion: Plaintiff has standing as he was injured by Defendant. Monetary harms "readily

qualify as concrete[.]" *See Maddox*, 19 F.4th at 62-63. Plaintiff's complaint alleges a monetary harm due to Defendant's violation of NYLL § 191. Specifically, Plaintiff alleges throughout his Complaint both specific individual and class allegations regarding late payments, including examples of dates for which he was **underpaid**. *See* Comp. ¶¶ 60-65. It is not only clear that delay in payment constitutes a concrete harm, but that violations of NYLL § 191(1)(a) constitute underpayments for which there can be no question of injury. *See Gillett*, 2022 WL 3285275, at *6 (citing *Vega*, 175 A.D.3d at 1145 ("each time [p]laintiff received late compensation for the work he performed, [d]efendants **underpaid** him for the work he performed"); *Caul* Order I at *4.

To be clear, these well-reasoned opinions are not outliers. The consistent standard of Federal Court rulings is that even a very small monetary delay is sufficient to establish Article III standing.  *See e.g.*, *Carpenters Indus. Council v. Zinke*, 854 F.3d 1 (D.C.C. 2017) (Kavanaugh, J.) ("A dollar of economic harm is still an injury-in-fact for standing purposes."); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("Any monetary loss suffered by the plaintiff satisfies [the injury-in-fact] element; even a small financial loss suffices.") (internal quotations omitted); *Stephens v. U.S. Airways Group*, 644 F.3d 437 (D.C.C. 2011) (("[m]oney later is not the same as money now"); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, (1945) (finding that liquidated damages are the remedy for the harm caused by delay in wage payment). Consequently, Plaintiff has sufficiently alleged concrete injury resulting from Defendant's violations of the NYLL § 191, and thus, clearly has established standing under Article III.

Defendant's contentions to the contrary are an extreme interpretation of the Supreme Court's holding in *TransUnion, LLC v. Ramirez*, and the Second Circuit's holding in *Maddox v. Bank of New York Mellon Co., N.A*. *See* 141 S. Ct. 2190 (2021); 19 F.4th 58 (2d Circ. 2021). Both *TransUnion* and *Maddox* found or explained instances of concrete harm that are far less than what Plaintiff has alleged here. *See* 141 S. Ct. at 2208-2209 (holding that the plaintiffs whose credit files

were provided to third parties with false information had Article III standing). Neither of these cases mandate a strict standard where a plaintiff must articulate the intimate details of a tangible injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 300, 340 (2016) ("[c]oncrete is not, however, necessarily synonymous with tangible… it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit").

In *Gillett*, Judge Failla succinctly articulated the problem with Defendant's overzealous interpretation of *TransUnion*:

> "Nothing in *TransUnion* demands that this Court reconstrue the nature of the financial injury that Plaintiff allegedly suffered as a result of [d]efendants' untimely payment of his wages. To the contrary, *TransUnion* affirmed that "certain harms readily qualify as concrete injuries under Article III," the most obvious being "traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 141 S. Ct. at 2204. The Supreme Court made clear that '[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.' *Id*. Plaintiff has alleged just this type of monetary injury as a result of [d]efendants' withholding of his wages beyond when they were legally obligated to pay him. **Even without any additional facts about how he would have used his wages if he had received them in a timely fashion, Plaintiff has alleged a concrete harm resulting from [d]efendants' alleged violation of Section 191**."

*See Gillett*, 2022 WL 3285275, at *6 (emphasis added).

Moreover, neither *TransUnion* nor *Spokeo* pertain to NYLL § 191, in which courts have already found that "the late payment of wages is a concrete harm" sufficient to confer standing on the plaintiff seeking relief under NYLL § 191. *See Gillett*, 2022 WL 3285275, at *6 (citing *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017)) ("That [d]efendants' delay **was only a week** or that the economic harm may amount to a relatively meager sum in absolute terms does not relegate [p]laintiff's injury in fact beyond the bounds of Article III") (emphasis added); *Caul* Order I at *4.

### *i.   Delay In Payment Is a Historical Article III Injury*

Defendant fails to address that multiple courts have found that mere delay in payment constitutes concrete injury. *Id.*  Delay has further been found to satisfy standing in wage and hour cases.  *See e.g. Andrews v. Rite Aid Corp.*, No. 20 Civ. 4521 (VSB) (S.D.N.Y. Mar. 11, 2021) (oral argument transcript attached as **Exhibit C**) (citing *Rogers v. City of Troy,* 148 F. 3d 52, 57 (2d Cir. 1998) (finding a delay in payment amounting to $2.96 satisfied Article III standing). This is the exact type of "traditional" harm the Supreme Court confirmed to constitute concrete injury in *Spokeo*. *See* 578 U.S. at 341.

Moreover, it is a well settled financial principle that the time value of money is more in the present than the future. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) ("[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money"). Delay alone is a concrete injury. The inability of Plaintiff to have and use money to which he was entitled is a concrete injury. *See Craig v. Boren*, 429 U.S. 190, 194–95, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The harm alleged here is "analogous to the harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *MSPA Claims 1, LLC v. Tenet Florida*, 918 F.3d 1312, 318 (11th Cir. 2019) (citing *Spokeo*, 578 U.S. at 341) (finding that the plaintiff adequately alleged an economic injury due to inability to use money that belonged to it).

While the Second Circuit has not squarely addressed the issue, other circuits have held that the temporary deprivation of money belonging to a plaintiff is a concrete, monetary harm that establishes Article III standing.  *See Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020) ("We agree with other circuits that the inability to have and use money to which a party is entitled is a concrete injury.  This is so because every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money.") (internal quotation marks omitted); *MSPA*

*Claims 1, LLC*, 918 F.3d at 1318; *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828-29 (7th Cir. 2018) (three day delay in restoring funds to plaintiff's bank account that were used for a fraudulent purchase was an economic injury because it deprived the plaintiff of the time value of money); *see also Porsch,* 380 F. Supp. 3d at 424 ("[T]emporary deprivation of money to which a plaintiff has a right constitutes sufficient injury in fact to establish Article III standing. As the Honorable Richard Posner has observed, albeit in another context, 'every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money'").

Defendant's reliance on cases that do not discuss delayed wage payments, is misguided. As Judge Kovner pointed out in *Caul* the "proposition that the temporary loss of money is too speculative to support Article III standing" is "overshadowed" by well-reasoned cases. *See Caul* Order II at *2;  Citing *Van v. LLR, Inc.*, 962 F.3d 1160, 1161, 1162-63 (9th Cir. 2020) (per curiam) and *Habitat Educ. Center v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir.2010). *Id*. The court in *Caul* went on to explain that the plaintiff's complaint, like the Complaint here, alleged the sufficient facts necessary to establish that the plaintiff suffered injury. *Caul* Order II at *2.

The *Caul* Plaintiff alleged that "throughout plaintiff's employment, defendants paid her on a bi-weekly basis, instead of 'within seven calendar days after the end of the week in which… wages were earned.'" *Id*. (holding that these allegations were adequate to plead that she was deprived of the time value of money during periods in which payment was illegally delayed); *see also Rosario*, 2022 WL 17553319, at *4 (finding plaintiffs had standing for NYLL § 191 violations where they alleged "they each lost the time value of [their] money).

Plaintiff's Complaint here sufficiently alleges harm suffered. As discussed above, Plaintiff's specific allegations regarding his late payments, including examples of dates for which his was underpaid are sufficient to allege injury. Comp., ¶¶ 7-11, 58-65. *See, e.g.*, *Elhassa v. Hallmark Aviation Servs., L.P.*, No. 21Civ. 9768 (LJL), 2022 WL 563264, at *2 (S.D.N.Y. Feb.

13

24, 2022) ("Even if the plaintiff's allegations currently are on the light side and do not contain detail on how the late payment specifically harmed her . . . the Court . . . cannot say at this stage that Defendant has substantial grounds for dismissal on the basis of standing); **Exhibit A**.

> ii.   *Allegations that an employer violated the timely pay requirements of the NYLL is sufficient to establish article III standing.*

"New York Labor Law § 191(1)(a)(i) provides that '[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]'" *Mabe v. Wal-Mart Assocs., Inc.*, No. 20 Civ. 00591, 2021 WL 1062566, at *2 (N.D.N.Y. Mar. 18, 2021) (quoting NYLL § 191(1)(a)(i)). "The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *See Vega*, 175 A.D.3d at 1145. Moreover, each failure to pay wages on time constitutes an **underpayment**. *See Gillett*, 2022 WL 3285275, at *6.

Depravation of wages is an "especially acute" injury for manual workers, as they are "generally dependent on their wages for sustenance." *Caul* Order I at *4 (quoting *Vega,* 175 A.D.3d  *at* 1144); *see also People v. Vetri,* 309 N.Y. 401, 405 (1955); *See also.*, Nishant Choksi, Helping Low-Income Workers Stay Out of Debt, Harvard Business Review (2020) ("Stagnant wages, a rising cost of living, and increasingly irregular schedules routinely force many working Americans onto a financial knife's edge; they're able to pay their usual bills but lack a buffer to handle even small financial shocks. Part of the problem is that most U.S. workers are paid biweekly"). In enacting NYLL § 191, the NY legislature specifically identified manual workers as those "dependent on their wages for sustenance." *See Vetri,* 309 N.Y. at 405. On a basic level, this means that manual workers need access to their wages to pay for the necessities of life: food, medical care, rent, and childcare.

Following *Vega*, the seminal decision examining NYLL § 191, courts have reasoned that, as an underpayment, a late payment of wages is itself a concrete harm constituting a "sufficient injury in fact to establish Article III standing." *Elhassa,* 2022 WL 563264, at *2 (citation omitted). For instance, in *Scott v. Whole Foods Mkt. Grp., Inc.*, the court noted that the purpose of the frequency of payment statute is "to protect the manual worker who [is] dependent upon the 'wages' he receive[s] weekly for his existence[,]" in other words to address the concrete harm that befalls manual workers when their wages are not received timely. No. 18 Civ. 0086 (SJF)(AKT), 2019 WL 1559424, at *3 (E.D.N.Y. Apr. 9, 2019), *adhered to on reconsideration*, No. 18 Civ. 0086 (SJF)(AKT), 2020 WL 9814095 (E.D.N.Y. Feb. 5, 2020). Notably, there was no question with respect to whether the plaintiffs in *Scott* had Article III Standing.

This proposition is further supported in *Caul v. Petco Animal Supplies, Inc*., where the court dismissed arguments that the plaintiff lacked standing in connection with a NYLL 191(1)(a) claim. No. 20 Civ. 3534 (RPK)(SJB), 2021 WL 4407856 (E.D.N.Y. Sep. 27, 2021). There, the court held that "the late payment of wages is a concrete harm." *Id*. at *4 "'[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing.'" *Id*. (quoting *Porsch,* 380 F. Supp. 3d at 424).

In the court's decision denying the defendant's request for interlocutory appeal on the issue of Article III standing, defendant argued that a heightened pleading standard should be required. In rejecting this argument, the court reasoned that:

> "...the complaint alleges the facts necessary to establish that plaintiff suffered that injury. Specifically, it alleges that throughout plaintiff's employment, defendants paid her on a bi-weekly basis, instead of 'within seven calendar days after the end of the week in which ... wages were earned,' as she alleges was required by law, Compl. 5; *see id.* 40-41 (alleging defendants' untimely payment of wages to plaintiff on February 15, 2019). **Those allegations are adequate to plead that she was deprived of the time value of her money during periods in which payment was illegally delayed**."

*See Caul*, 2021 WL 6805889, at *2 (emphasis added).

> ### iii.   Courts have similarly accepted allegations of an untimely payment under the FLSA as enough to establish Article III standing.

The Supreme Court has further instructed that a concrete injury "is not, however, necessarily synonymous with tangible… it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *See Spokeo,* 578 U.S. at 340. Courts have routinely found delay in payment to be actionable in FLSA cases. *See e.g.* **Exhibit C**) (finding a two week delay in wage payment amounting to $2.96 satisfied Article III standing). Moreover, the Supreme Court has specifically found that a delay in the payment of wages is a harm that is uniquely solved via liquidated damages:

> "[Liquidated Damages] constitutes a Congressional recognition **that failure to pay the statutory minimum on time** may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, **that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being**"

*See Brooklyn,* 324 U.S. at 707 (emphasis added). The Supreme Court in *Brooklyn* did not look into what the plaintiff would have done with their money, or if they suffered any further financial harm, only that their payment was delayed. *See, Id.*  Moreover, the court's holding did not turn on the length of the delay, only that a delay in payment occurred. *See Biggs v. Wilson*, 1. F. 3d 1537, 1542 (9th Cir. 1993) ([*Brooklyn Savings Bank*] "did not rest its holding on the length of delay… long versus short [delay] strikes us as an unworkable standard").

Given the clear holding of *Brooklyn Savings Banks,* it is no surprise that courts have continued to find that a plaintiff has standing to receive liquidated damages for a delay in wage payments. *See e.g. United States v. Edwards,* 995 F. 3d 342, 345-347 (4th Cir. 2021) ("compensation must be paid on a current basis as work is done, such that an employee receives

the prescribed compensation without delay. But when an employer fails to pay those amounts, the employee suffers losses, which includes the loss of the use of that money during the period of delay"); *Biggs,* 1. F. 3d at 1544 ("failure to issue the class's paychecks promptly when due violates the FLSA. Paychecks are due on payday. After that, the minimum wage is unpaid"); *Martin v. United States,* 117 Fed. Cl. 611, 621 (2014) (internal citations omitted) ("The FLSA requires—and the Supreme Court has recognized approvingly—that an employee receive on time payment for work performed"). Contrary to Defendant's arguments, none of these ruling looked past the fact that delay in payment was suffered to establish injury.

Plainly, the delay of wage payment is a traditional harm. As there are no meaningful differences between the FLSA and NYLL, there is no reason that a delay in payment would not similarly establish standing under both statues. *See Beh,* 2021 WL 3914297, at *2-5. In addition, Defendant's argument would mean that any plaintiff alleging any wage claim, including an overtime claim, would also have to explain what they would have done with their unpaid wages in order to have standing to receive liquidated damages under either the FLSA or NYLL. This is in direct contrast to Supreme Court precedent. *See Brooklyn Sav. Bank*, 324 U.S. at 707. Thus, Defendant's argument in this regard must fail.

### B.  A Violation of NYLL § 191(1)(a) Constitutes Underpayment

Defendant does not attempt to justify its position that delay does not cause injury, nor does Defendant grapple with the consistent findings that NYLL § 191(1)(a) violations constitute underpayments which trigger the liquidated damage provisions of NYLL § 198. *See e,g., Sorto v. Diversified Maint. Sys.*, No. 20 Civ. 1302 (JS)(SIL), 2020 WL 8413553, at *2 (E.D.N.Y. Nov. 15, 2020) (report and recommendation adopted 2020 WL 7693108 (Dec. 28, 2020) ("the moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required") (quoting *Vega*, 175 A.D.3d at 1145). The instant matter is a perfect example of

where an underpayment occurred due to a violation of NYLL § 191(1)(a). Plaintiff alleges he was a manual worker as contemplated by the statute, and that Defendant owed his lawfully earned pay within seven days of the week in which he completed his work, yet did not provide his pay on the timely basis required. *See* Compl., ¶¶ 60-65). Accordingly, multiple weeks came and went where Plaintiff was not paid his owed wages on the day they were due, or put differently, Plaintiff was underpaid. *See Vega*, 175 A.D.3d at 1145 (holding that an employee suffers an "underpayment" of wage "[t]he moment that an employer fails to pay wages in compliance with [the timely pay requirements of NYLL] section 191(1)(a)". Despite these allegations, Defendant protests that they eventually compensated Plaintiff for the hours he worked, but this is only a partial defense. This is because at the time it paid Plaintiff, he was not only entitled to the underlying wages, he was also entitled to liquidated damages, interest, and even injunctive relief for the violations which occurred when his wages were not paid by their due date. *See Duverny v. Hercules Medical P.C.*, No. 18 Civ. 7652 (DLC), 2020 WL 1033048, at *5 (S.D.N.Y. Mar. 3, 2020) (citing *Vega*, 175 A.D.3d at 1145) ("[a] plaintiff's entitlement to statutory damages pursuant to [NYLL] § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action").

Surely, Defendant is not arguing that the liquidated damages provisions of New York Labor Law § 198 that *compensate* plaintiffs for underpayments are unconstitutional, nor could they. After all, there are "no meaningful differences" between NYLL § 198 and 29 U.S.C § 216. *See Rodrigue*, 2021 WL 3848268, at *5 (Aug. 27, 2021) (quoting *Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018)). The United States Supreme Court in *Brooklyn*, affirmed the New York Court of Appeals and stated in relevant part as follows: "**that double payment must be made in the event of delay** in order to insure restoration of the worker to that minimum standard of well-being". *See* 324 U.S. 697, 707 (1945) (emphasis added).

18

It is more than clear, that being underpaid constitutes a "concrete" injury. As such, Plaintiff's Article III standing is established for his NYLL § 191(1)(a) claim.

## C. **Defendant's Constitutional Argument Is Not Appropriate at This Time**

Defendant raises a concern of constitutional due process; however, this argument is not appropriate to determine at this stage, as there has been no damages award against Defendant yet. *See Rodrigue*, 2021 WL 3848268, at *6 (citing *Thomas v. iStar Financial, Inc*., 652 F.3d 141, 149 (2d Cir. 2010) (finding defendants' due process argument was premature as "there has been no liquidated damages award, and there is no record on which to assess whether an award would be excessive"); *see also Hodel v. Virginia Surface Min and Reclamation, Ass'n, Inc.*, 452 U.S. 264, 304 (1981) (finding a due process challenge to civil penalties "premature" where the defendants had no penalties assessed against them).

Moreover, Defendant cannot explain why liquidated damages for delayed wage payments would be excessive, because the Supreme Court has opined that they exist to compensate a Plaintiff for the delay in receiving their wages. *See Brooklyn Sav. Bank* 324 U.S. at 707. In addition, even if Defendant was correct, they do not explain why this entitles them to dismissal, instead of a reduction of any hypothetical damages reward. *See Rodrigue*, 2021 WL 3848268, at *6. Consequently, Defendant's due process challenge should be denied.

## III.    PLAINTIFF HAS ADEQUATELY ALLEGED AN OVERTIME CLAIM

Plaintiff has alleged that Defendant failed to included nondiscriminatory bonuses, including attendance bonuses, into Plaintiff's overtime Rate. *See* Complaint. The FLSA and NYLL mandate that employers compensate their employees no less than 1.5 times their "regular rate" of pay. *See* 29 U.S.C. § 207(a)(1); NYLL Article 19 §§ 650 *et seq.*  The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee." *See* 29 U.S.C. 207(c).  While

the FLSA does not require employers to pay its employees on an hourly rate, for the purposes of

calculating overtime, the "regular rate" is an hourly rate:

> The 'regular rate' under the Act is a rate per hour.  The Act does not require
> employers to compensate employees on an hourly rate basis; their earnings may be
> determined on a piece-rate, salary, commission, or other basis, but in such case the
> overtime compensation due to employees must be computed on the basis of the
> hourly rate derived therefrom and, therefore, it is necessary to compute the regular
> hourly rate . . .

*See* 29 C.F.R. § 778.109.  The Federal Code of Regulations specifically addresses the

situation of employees paid on an hourly basis with additional compensation in the form of bonus

pay in 29 C.F.R. § 778.110.  In this regard, the Regulations mandate that any such bonus be

including in calculating the regular rate of pay for the purposes of overtime. *See* 29 C.F.R. §

778.110(b).  The code provides the following example:

> If the employee receives, in addition to the earnings computed at the $12 hourly
> rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13
> an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total
> of $598; this total divided by 46 hours yields a regular rate of $13). The employee
> is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6
> hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50).

*See* 29 C.F.R. § 778.110(b).  The identified bonus pay above must be factored into an employee's

regular rate of pay because they were used by Defendant to "induce [employees] to work more

steadily or more rapidly or more efficiently." *See* 29 C.F.R. § 778.211(c).

Defendant appears to be confused by Plaintiff's claim, as they focus on referral bonuses

and sign-on bonuses that were not included in Plaintiff allegations. *See* ECF No. 8-4, pgs. 22-23.

For example, Defendant discusses Plaintiff's start date in June of 2021, but does not explain the

bonus Plaintiff received on the paystub provided for the period of September 20, 2021 to October

3, 2021. *See* ECF No. 1-1, pgs. 3-4. This $300 bonus was clearly not included in Plaintiff's

overtime rate. *See id.* Moreover, Plaintiff explicitly alleges that his **attendance** bonuses were non-

discretionary. *See* Cmpl. ¶ 5. To the extent, Defendant disputes the nature of these bonuses, that is

clearly a merits-based issue that is not ripe for consideration on a Rule 12 motion. At this stage, that factual allegations of Plaintiff's complaint are taken as true. *See Sierra Club* 911 F.3d at 88. Accordingly, Plaintiff has alleged a plausible overtime claim.

### IV.   PLAINTIFF HAS STANDING FOR HIS CLAIMS UNDER NYLL § 195(3)

Plaintiff has also established that he was harmed by Defendant's failure to provide accurate wage statements. In order to establish standing for an "informational injury" a Plaintiff must allege "downstream consequences" stemming from a from failure to receive required information." *See Harty*, 28 F. 4th at 444 (quoting *TransUnion*, 141 S. Ct. at 2214). In this regard Plaintiff has alleged that he was harmed by Defendant's failure to provide accurate wage statements violation of NYLL § 195(3), because "Plaintiff relied on his paystubs to ensure that Defendant paid him the correct rate for his hours worked." *See* Cmpl. ¶ 13. Moreover, Plaintiff alleged that the misinformation contained in the paystubs Defendant provided allowed "Defendant to continue their unlawful wage and hour scheme without Plaintiff's or similarly situated Hourly Workers' awareness that they were being underpaid." *See id.* ¶ 14.

In this regard Plaintiff's allegations are substantially similar to the allegations of the plaintiffs in *Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740 (LGS), 2022 WL 2751871, at *2 (Jul. 14, 2022). In *Mateer*, Judge Schofield denied the defendant's attempt to dismiss claims under NYLL § 195, finding "in contrast to technical violations of [NYLL § 195] that have been dismissed for lack of standing in some cases… [plaintiff's allegations] go beyond asserting a bare statutory violation and sufficiently allege a concrete harm. *See id.* (internal citations omitted).

Defendant cites cases that are not analogous to the present matter, because the plaintiffs in those case did not identify any specific harm. *See Francisco v. NY Tex Care, Inc*., No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *1 (E.D.N.Y. Mar. 28, 2022) ("[p]laintiff **has not linked any injury-in-fact** to [d]efendants' failure to provide statutory notice") (emphasis added); *Sevilla*

*v. House of Salads One LLC*, No. 20 Civ. 6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (finding that plaintiff had not established a tangible injury); *Deng v. Frequency Elecs., Inc*., No. 21 Civ. 6081 (BMC), 2022 US Dist LEXIS 206390, at *25 (E.D.N.Y. Nov. 14, 2022) (finding that the plaintiffs had not established standing because their complaint contained "no allegations that she was somehow injured merely because of the failure to provide the required notice and statements"). Plaintiff here has instead readily identified how Defendant's inaccurate wage statements allowed Defendant to continue with their unlawful pay scheme.

Moreover, NYLL § 195 was drafted explicitly to ensure that employees were apprised of their right in order to "far better protect workers' rights and interests." *See Imbarrato v. Banta Mngmt. Services, Inc.*, No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *9 (S.D.N.Y. Mar. 20, 2020) (citing N.Y. Spons. Mem., 2010 S.B. 8380). In *Imbarrato*, Judge Nelson noted that

> "[i]t is clear that [NYLL § 195] was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL. The statute explicitly recognizes that this interest is put at risk when employees are 'mis- or un-informed regarding their rights and the responsibilities of their employers,' and seeks to guard against that harm by requiring employers to regularly apprise their employees of such information as the rate and basis for their wages and any allowances claimed by the employer"

*See id.* at *8 (citing *Hicks v. T.L. Cannon Management Corp.*, No. 13 Civ. 6455 (EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018). Accordingly, Plaintiff's alleged injury is the exact type of harm the New York legislature sought to protect employees from when drafting NYLL § 195, and Plaintiff has standing to bring this claim.

## V.   THE CLASS PERIOD SHOULD NOT BE LIMITED TO PLAINTIFF'S EMPLOYMENT DATES

Defendant urges the Court to accept a minority view that the temporal scope of the class in this matter should be limited to the dates of Plaintiff's employment. However, this is not an appropriate argument to make on a Rule 12 motion. *See Harris v. Old Navy*, No. 21 Civ. 9946

(GHW) (GWG), 202 WL 16941712, at *5 (S.D.N.Y. Nov. 15, 2022) (Gorenstein, Maj. J.) (citing *Rojas v. Triborough Bridge & Tunnel Auth.*, 2020 WL 1910471, at *3 (S.D.N.Y. Apr. 17, 2020) (citing *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) (collecting cases)); *see also Levy*, 2022 WL 16645829, at *6. ("a "proposed class definition is not properly adjudicated at the Rule 12(b)(6) stage, and should be raised in connection with any Rule 23 motion for class certification").

Even if the Court were to consider Defendant's argument at this stage, Defendant's position is a departure from the well-established principles of a class action under Rule 23. *See e.g. Umbrino v. L.A.R.E. Partners Network, Inc.*, 585 F. Supp. 3d 355, 357 (W.D.N.Y. Feb. 15, 2022) (citing *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018); *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 193 (D. Conn. 2020)) (refusing to limit the temporal scope of a class to employment dates of the name plaintiff, because "the course of Named Plaintiffs' employment plainly implicates the same set of concerns as [d]efendants' alleged failure to comply with the NYLL in precisely the same manner during the unnamed class members' employment"). Moreover, the Second Circuit has opined that it is an "obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate." *See Langan*, 897 F. 3d at 95 (citing *In re Bayer Corp.*, 701 F. Supp. 2d 356, 377 (2d Cir. 2010). As class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, "it makes little sense" to dismiss claims of unnamed class members for want of standing. *See id.*

Notably, nothing in Rule 23 regarding adequacy states that the named plaintiff must have been employed during the entire statutory period. If that were the case, no NYLL class action would be certified for the entire statute, yet to the contrary hundreds of NYLL class actions have been certified for the entire statutory period. See generally, e.g., *Perez v. Allstate Ins. Co.*, No. 11

Civ. 1812, 2014 WL 4635745 (Sept. 16, 2014); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61

(S.D.N.Y. Nov. 30, 2018); *Porter v. Mooregroup Corp*., No. 17 Civ. 7405, 2021 WL 3524159

(E.D.N.Y. Aug. 11, 2021); *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. Jun. 19, 2012).

Additionally, Defendant's proposition results in a waste of judicial economy. In this regard, class

members will inevitably have longer periods of employment which will result in new filings with

new plaintiffs seeking class certification for various periods of time. This type of piecemeal

litigation is contrary to the purpose of Rule 23

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

Motion in its entirety.

Dated: New York, New York
February 8, 2023

Respectfully submitted,

*/s/ Brian S. Schaffer*
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the
Putative Class*