UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIC FREELAND, individually and on behalf of
all others similarly situated,

                                        Plaintiff,              Case # 22-CV-6415-FPG

v.                                                              DECISION AND ORDER

FINDLAY'S TALL TIMBERS DISTRIBUTION
CENTER, LLC d/b/a OHIO LOGISTICS,

                                        Defendant.

# INTRODUCTION

On September 28, 2022, Plaintiff Eric Freeland filed this putative wage-and-hour class action against Defendant Findlay's Tall Timbers Distribution Center, LLC d/b/a Ohio Logistics. *See generally* ECF No. 1.[1]  On January 11, 2023, Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 8.  Plaintiff filed his response on February 8, 2023, ECF No. 12, and Defendant replied on March 1, 2023, ECF No. 15.  As explained below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

# BACKGROUND

Defendant is an Ohio-based company that provides warehousing and logistical support services throughout the eastern United States.  ECF No. 1 ¶ 2.[2]  From April 2021 through April 2022, Defendant employed Plaintiff at one of its warehouses in Painted Post, New York.  *Id.* ¶ 55. Plaintiff's duties involved, among other things, lifting and carrying equipment and freight, operating heavy machinery, and breaking down ceramic parts by hand.  *Id.* ¶ 58.

---

[1] The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332(d), and 1367.  The Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b).
[2] Unless otherwise noted, the facts are drawn from the Complaint, ECF No. 1.

Defendant paid Plaintiff an hourly wage, and he received his paychecks on a biweekly basis. *Id.* ¶¶ 4, 7. Defendant also paid Plaintiff bonuses, including attendance bonuses. *Id.* ¶ 5. Plaintiff often worked more than forty hours per week and earned overtime pay for doing so. *Id.* ¶¶ 56-57. His overtime rate reflected one and one-half times his usual hourly rate, but did not reflect the bonuses that he received during the relevant pay periods. *Id.*; *see* ECF No. 1-1.

On September 28, 2022, Plaintiff filed this putative class action against Defendant alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See generally* ECF No. 1. He alleges that (1) Defendant violated the FSLA by failing to include non-discretionary bonuses in the rate of pay used to calculate his overtime rate; (2) Defendant violated the NYLL for the same reason; (3) Defendant violated NYLL § 191(1)(a) by paying him on a biweekly basis; and (4) Defendant violated NYLL § 195(3) by providing wage statements that inaccurately stated the overtime rate to which he was entitled. *See id.* ¶¶ 68-72, 73-76, 77-80, 81-83.

Plaintiff seeks to bring his FSLA claim on behalf of himself and all similarly situated persons who work or have worked for Defendant as hourly workers (the "FSLA Collective"). ECF No. 1 ¶ 33. Plaintiff seeks to bring his NYLL claims on behalf of himself and all persons who worked for Defendant as hourly workers in New York between February 9, 2016, and the date of final judgment in this matter. *Id.* ¶ 45.

On January 11, 2023, Defendant moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. *See* ECF No. 8. Defendant has also moved, in the alternative, to strike any class claims outside of the period of Plaintiff's employment. ECF No. 8-4 at 26-27.

## LEGAL STANDARDS

### I.       Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), such as when a plaintiff lacks standing, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).   In considering a facial motion to dismiss for lack of standing under Rule 12(b)(1), the Court must "determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56-57.   In doing so, the Court must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff.  *Id.* at 57; *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975).

### II.      Article III Standing

Article III restricts federal courts to the resolution of cases and controversies.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008).   "That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation."   *Id.*   The "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs.  of Wildlife*, 504 U.S. 555, 560 (1992)).   In order to plausibly plead an injury in fact, a plaintiff must show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

3

### III.        Rule 12(b)(6)

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  A complaint is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility "is not akin to a probability requirement."  *Id.*  Instead, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation marks and citation omitted).  A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro.  Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

**DISCUSSION**

Defendant asks the Court to dismiss Plaintiff's Complaint in its entirety. ECF No. 8-4 at 2. With respect to Plaintiff's overtime claims, Defendant asserts that Plaintiff has failed to allege a plausible overtime claim under both federal and New York law. *Id.* at 21-22. With respect to Plaintiff's untimely pay claim under NYLL § 191(1)(a), Defendant seeks dismissal on three grounds: (1) that Plaintiff has failed to allege an injury-in-fact sufficient to support standing; (2) that the relevant statute does not provide for a private right of action; and (3) that Plaintiff has failed to plausibly allege that he was a manual worker to whom the statute applies. *Id.* at 8-19. Defendant seeks dismissal of Plaintiff's wage statement claim under NYLL § 195(3) for lack of standing on the grounds that Plaintiff has failed to sufficiently allege an injury in fact. *Id.* at 7-8. Defendant also argues that Plaintiff does not have standing to represent a class with claims arising outside of the period of his employment. *Id.* at 23-24. The Court considers each argument in turn.

**I.   Federal and State Overtime Claims**

Plaintiff alleges that during his employment, he frequently worked over forty hours per week and that Defendant did not include certain non-discretionary bonuses when calculating his overtime rate in violation of the FSLA and the NYLL. ECF No. 1 ¶¶ 57, 70-71, 74-75. Defendant contends that Plaintiff's federal and state overtime claims should be dismissed because he has failed to adequately allege that Defendant improperly excluded a bonus in calculating his overtime rate or that his overtime pay was improperly calculated. ECF No. 8-4 at 21. The Court disagrees. As explained below, Plaintiff has plausibly alleged a violation of the FSLA and NYLL with respect to Defendant's calculation of his overtime rate, and Defendant's motion to dismiss Plaintiff's federal and state overtime claims is therefore denied.

Under the FSLA, an employer must pay overtime at one and one-half times the employee's "regular rate" of pay.   29 U.S.C. § 207(a)(1).   An employee's regular rate includes "all remuneration for employment paid to, or on behalf of the employee," with certain enumerated exceptions.   *Id.* § 207(e).   Whether an employer must include a bonus in determining an employee's regular rate depends on whether the bonus is discretionary or non-discretionary.   *See* 29 C.F.R. § 778.211.   A bonus is discretionary, and therefore excludable, if the employer retains discretion as to both the fact of payment and the amount "until a time quite close to the end of the period for which the bonus is paid."   *Id.* § 778.211(b).   Bonuses "announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay.   Most attendance bonuses . . . are in this category." *Id.* § 778.211(c).

New York Department of Labor regulations also require that an employer pay an employee for overtime at one and one-half times the employee's regular rate "in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of [the FSLA]."   N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Mendez v. Radec Corp.*, 232 F.R.D. 78, 89 n.6 (W.D.N.Y. 2005) ("In general, New York regulations incorporate the overtime requirements of the FLSA"). Because New York's overtime regulations therefore incorporate the provisions of the FLSA, the Court will analyze Plaintiff's overtime allegations under federal and state law together.   *See Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 89 n.5 (2d Cir. 2013).

To state a "plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *see also Dejesus*, 726 F.3d at 88; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d

Cir. 2013); *Lusk v. Serve U Brands, Inc.*, No. 17-CV-6451, 2018 WL 826857, at *3 (W.D.N.Y. Feb. 12, 2018) (applying *Lundy* standard to complaint alleging improper overtime rate calculation). While an approximation of overtime hours is not a "necessity in all cases," such an approximation "may help draw a plaintiff's claim closer to plausibility." *Lundy*, 711 F.3d at 114 n.7. Accordingly, the Second Circuit has held that an allegation that, in "some or all weeks" a plaintiff worked "more than 'forty hours' a week without being paid '1.5' times her rate of compensation" is not enough to state a plausible FLSA overtime claim. *See Dejesus*, 726 F.3d at 89. In reaching this conclusion, the Second Circuit explained that "[w]hatever the precise level of specificity that was required of the complaint, [plaintiff] at least was required to do more than repeat the language of the statute." *Id.* In any event, "[d]etermining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679).

Here, Plaintiff has adequately pled his federal and state overtime claims because he has plausibly alleged he worked over forty hours in a given week and that he was underpaid for doing so. *Lundy*, 711 F.3d at 114; *Lusk*, 2018 WL 826857, at *3. Although, standing alone, Plaintiff's allegation that he "frequently worked over 40 hours per week" might not be sufficient, *see Dejesus*, 726 F.3d at 89, Plaintiff has also made specific allegations that push his claim "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Specifically, he alleges that during the pay period of May 31, 2021 to June 13, 2021, he "worked 7 hours and 45 minutes of overtime" and was paid an overtime rate of $21.75 per hour. ECF No. 1 ¶ 57. He has also attached to the Complaint paystubs for the pay periods of May 31, 2021 to June 13, 2021 and September 20, 2021 to October 3, 2021, both of which reflect his overtime hours and his overtime pay rate. ECF No. 1-1 at 2-3. This is enough to establish that Plaintiff worked more than

forty hours in a given week.  *See Sydorowitz v. City of New York*, No. 20-CV-9233, 2022 WL 836847, at *2-3 (S.D.N.Y. March 21, 2022) (plaintiff stated plausible overtime claim by submitting paystub reflecting that she worked a total of forty-three hours and fifteen minutes in one week); *Beh v. Community Care Companions Inc.*, No. 19-CV-1417, 2020 WL 1915305, at *9-10 (W.D.N.Y. Apr. 20, 2020) (plaintiffs stated a plausible claim by setting out the number of hours worked per week within a specific date range), *report and recommendation adopted*, 2021 WL 83501 (W.D.N.Y. Jan. 11, 2021).  Plaintiff has therefore plausibly alleged that he was entitled to overtime pay under the FLSA.

Plaintiff also plausibly alleges that Defendant failed to properly calculate Plaintiff's rate of pay.  Contrary to Defendant's assertion, Plaintiff offers more than a "bare assertion that the bonus was not included in Plaintiff's regular rate and his overtime pay was improperly calculated."  ECF No. 8-4 at 24.  Plaintiff alleges that he received "non-discretionary bonuses, including but not limited to, attendance bonuses."  ECF No. 1 ¶ 5.  He further states that his overtime rate during the pay period of May 31, 2021 to June 13, 2021, $21.75 per hour, did not take into account the non-discretionary bonus he earned.  *Id.* ¶ 57; *see also* ECF No. 1-1 at 2.  That rate represents one and one-half times the rate of the hourly rate reflected on his paystub, and does not appear to incorporate the $100.00 bonus for that pay period.  ECF No. 1-1 at 2.  The overtime rate reflected on his paystub for the pay period of September 20, 2021 to October 3, 2021 likewise does not appear to reflect a bonus he received for that pay period.[3]  *Id.* at 3.

---

[3] Plaintiff's hourly rate at the time was $14.50.  ECF No. 1-1 at 2.  An overtime rate of $21.75 reflects one and one-half times that rate, and does not appear to take into account the $100 bonus. With respect to the pay period of September 20, 2021 to October 3, 2021, Plaintiff's hourly rate was $16.25.  ECF No. 1-1 at 3.  The overtime rate of $24.375 reflects a rate of one and one-half times that rate, and therefore likewise does not appear to take into account the bonus reflected on the paystub.

Plaintiff has alleged that (1) he worked more than forty hours in a given week, (2) that he received a bonus during the relevant period, and (3) that this bonus was erroneously excluded from the calculation of his regular rate of pay and thus also from his overtime rate.  Taken together, Plaintiff's allegations and the paystubs attached to the complaint therefore "support an inference that [he] was not given compensation for [his] hours worked above forty hours at a rate one-and-a-half times the rate of [his] regular pay." *Sydorowitz*, 2022 WL 836847, at *2.

Defendant also takes issue with Plaintiff's purported allegation that one of the bonuses improperly excluded from his regular rate is a "referral bonus," which may be discretionary.  ECF No. 8-4 at 25-26; *see* 29 C.F.R. § 778.211(d) (referral bonuses for employees not primarily engaged in recruiting activities may be discretionary).  While one of Plaintiff's paystubs includes a $50.00 "RefBonus," ECF No. 1-1 at 3, Plaintiff does not assert that Defendant should have included this bonus in his regular rate, *see* ECF No. 1 ¶ 57.  Accordingly, to the extent that that payment may reflect a discretionary bonus that Defendant properly excluded from Plaintiff's regular rate, Plaintiff's allegations regarding the remaining bonuses, the nature of which Defendant does not appear to contest, are sufficient to support Plaintiff's overtime claim.  *See Sydorowitz*, 2022 WL 836847, at *2.

In sum, Plaintiff has plausibly alleged that, under the FLSA and NYLL, he was entitled to overtime pay and that Defendant improperly calculated his overtime rate by excluding certain bonuses from the regular rate from which it calculated his overtime rate.  Accordingly, Defendant's motion to dismiss Plaintiff's overtime claims under the FLSA and NYLL is denied.

## II.  Late Payment Claim Under N.Y. Labor Law § 191

Plaintiff alleges that because Defendant paid him on a biweekly, rather than weekly, basis, Defendant's wage payments were untimely under NYLL § 191(1)(a).  ECF No. 1 ¶¶ 77-80.

Defendant seeks dismissal of this claim on several grounds.  Defendant first argues that Plaintiff does not have standing to bring this claim because he has not plausibly alleged an injury-in-fact. ECF No. 8-4 at 8.  Defendant then urges the Court to find that NYLL § 191 does not provide a private right of action.  *Id.* at 10-17.  In support of this argument, Defendant argues that the canon of constitutional avoidance warrants dismissal.  *Id.* at 19-20.  Finally, Defendant argues that Plaintiff has failed to plausibly allege he was a "manual worker," and therefore that the weekly pay requirement of NYLL § 191 applies to him.  *Id.* at 20-23.  As explained below, the Court disagrees with each of Defendant's arguments and denies its motion to dismiss Plaintiff's claim under NYLL § 191(1)(a).

## A. The Statutory Scheme

Section 191(1)(a) requires employers to pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned," unless the Commissioner of the New York Department of Labor has authorized the employer to pay the worker less frequently.  *See Gillett v. Zara USA, Inc.*, No. 20-CIV-3734, 2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022).  Section 190(4) defines "manual worker" as "a mechanic, workingman or laborer."  The New York Department of Labor has elaborated on this terse definition, long interpreting the term to include "employees who spend more than 25 percent of their working time performing physical labor."  N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009).  The Department interprets "physical labor" broadly to include a wide range of physical activities.  *Id.* The duties an employee performs, not his title, determines whether he is a manual worker.  *See Gonzalez v. Gan Israel Pre-School*, No. 12-CV-6304, 2014 WL 1011070, at *12 (E.D.N.Y. March 14, 2014).

**B.  Standing**

Plaintiff alleges that Defendant paid him on a biweekly basis in violation of NYLL § 191. ECF No. 1 ¶ 60-65, 79.  Because Plaintiff received some of his wages a week later than he should have, Plaintiff was allegedly "underpaid" and "denied the time-value of his money [and] was unable to invest, save, or purchase utilizing the wages he earned." *Id.* ¶ 64.  Defendant argues that this "perfunctory allegation" is not enough to plead a concrete and particularized injury capable of supporting standing.  *See* ECF No. 8-4 at 11-13.  This dispute therefore centers on whether Plaintiff's allegation that he "was denied the time-value of his money" and was unable to use his wages to "invest, save, or purchase," ECF No. 1 ¶ 64, is enough to establish the kind of injury that may confer Article III standing.   As explained below, the Court agrees with Plaintiff that it is.

Certain tangible harms, such as monetary harms, "readily qualify as concrete injuries under Article III."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  Accordingly, "if a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."  *Id.*  Although the Second Circuit does not appear to have determined whether lost time value of money constitutes such an injury, the Seventh, Ninth, and Eleventh Circuits have all concluded that it does.  *See Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010); *see also In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) (noting, in the context of damages, that "delay in . . . receipt of refunds and the forgone time value of that money, is an actual, tangible pecuniary injury.").

11

Particularly instructive here is the Eleventh Circuit's decision in *MSPA Claims 1*.  There, the defendant argued that the plaintiff failed to allege an injury in fact because the plaintiff's only injury was "not getting its . . . reimbursement, and that injury disappeared when [plaintiff] was paid in full."  *MSPA Claims 1*, 918 F.3d at 1318.  The Eleventh Circuit rejected this argument, concluding that the injury stemmed "not just from its entitlement to reimbursement . . . but also from its entitlement to receive that reimbursement *on time*."  *Id.* (citations omitted).  That injury "could not be remedied by simply receiving the amount owed—it requires something more to compensate for the lost time, like interest."  *Id.*  It therefore concluded that delay alone is a concrete injury for standing purposes.  *Id.*

The Eleventh Circuit's decision, along with the Seventh Circuit's decision in *Habitat*, "reflect the firmly established principle that tort victims should be compensated for loss of use of money—through either an award of damages or the payment of prejudgment interest."  *Van*, 962 F.3d at 1164.  The lost time value of money is therefore "analogous 'to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts'—a debtor's delinquent payment to a creditor."  *MSPA Claims 1*, 918 F.3d at 1318 (quoting *Spokeo*, 136 S. Ct. at 1549).  As the Supreme Court explained in *Spokeo*, such a "close analogy to a traditional common law right further supports concreteness."  *Id.*  (citing *Spokeo*, 136 S. Ct. at 1549).

Like the plaintiff in *MSPA Claims 1*, Plaintiff's alleged injury here stems not just from his entitlement to his wages, but his "entitlement to receive [those wages] *on time*."  918 F.3d at 1318.  In line with this view, several courts in this Circuit have concluded that employees have standing to bring untimely payment claims under NYLL § 191(1)(a) because the late payment of wages is a concrete harm sufficient to support standing.  *See e.g.*, *Petrosino v. Fastenal Co.*, No. 22-CV-705, 2023 WL 3496362, at *3-4 (N.D.N.Y. May 17, 2023); *Espinal v. Sephora USA, Inc.*, No. 22-

CIV-3034, 2022 WL 16973328, at *3-4 (S.D.N.Y. Nov. 16, 2022); *Levy v. Endeavor Air, Inc.*, No.

21-CV-4387, 2022 WL 16645829, at *2-3 (E.D.N.Y. Nov. 1, 2022); *Gillett v. Zara USA, Inc.*, No.

20-CIV-3734, 2022 WL 3285275, at *6 (S.D.N.Y. Aug. 10, 2022); *Elhassa v. Hallmark Aviation

Services, L.P.*, No. 21-CV-9768, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022); *Caul v. Petco

Animal Supplies, Inc.*, No. 20-CV-3534, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021).

Where courts have granted motions to dismiss for a lack of injury in fact, they have done

so where the plaintiffs failed to allege any consequence of the delayed payments, alleging no more

than a bare statutory violation. *See e.g.*, *Rath v. Jo-Ann Stores, LLC*, No. 21-CV-791, 2022 WL

3701163, *8 (W.D.N.Y. Aug. 26, 2022); *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-

4313, 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022).  For example, in *Rath v. Jo-Ann Stores,

LLC*, the court held that the plaintiff did not allege sufficient harm where she "merely allege[d]

Defendant's failure to make timely, weekly payments of her salary . . . without alleging the

consequence of biweekly pay."  2022 WL 3701163, *8.  In *Rath*, the court distinguished the

plaintiff's allegations from other cases in which, as here, "[plaintiff] alleged that he lost money

owed to him, interest and investment opportunities, and the time value of the unpaid wages."  *Id.*

at *8.  Likewise, in *Rosario v. Icon Burger Acquisition LLC*, the court noted that the plaintiff's

"barebones Amended Complaint . . . simply allege[d] that 'Defendant failed to pay Plaintiff and

the Class on a timely basis as required by [§ 191(1)(a)],' so Plaintiff and the class are entitled to

damages."  2022 WL 198503, at *3.

The problem in *Rosario* and *Rath* was not, therefore, as Defendant contends, that the

plaintiffs alleged solely the lost time value of their money, but that they stated nothing more than

a bare violation of the New York statute.  In contrast, where a plaintiff has alleged some

consequence of that violation, such as the lost time value of money, there is agreement among

courts in this Circuit that a plaintiff has alleged an injury-in-fact sufficient to establish standing at the motion to dismiss stage.  *See e.g.*, *Petrosino*, 2023 WL 3496362, at *3-4; *Nunez v. Executive Le Soleil New York, LLC*, No. 22-CIV-4262, 2023 WL 3319613, at *3-4 (S.D.N.Y. May 9, 2023); *Gillett*, 2022 WL 3285275, at *6.

Nevertheless, Defendant contends that the myriad decisions concluding that lost time value of money is a sufficiently concrete injury to support standing "cannot be reconciled" with Supreme Court and Second Circuit authority.  ECF No. 15 at 8.  Pointing to the Supreme Court's decision in *Spokeo*, Defendant argues that "[l]isting a range of potential past harms is not the equivalent of alleging 'an injury in fact [that is] both concrete and particularized."  *Id.* (alteration in original). Defendant appears to assert that, in order to find standing, the Court should require Plaintiff to describe what exactly he would have used the money for had he received it on time.  *See* ECF No. 15 at 9.  But this argument sweeps too broadly.  It would apply equally to an employee who was, for example, underpaid for overtime work, but who failed to spell out his "financial strategies or investment practices that would have increased the value of any funds" or "what, if anything, he would have done with a given paycheck if he received the amount [due]."  ECF No. 8-4 at 12. Under this view, a plaintiff who did not plead any such plans would have failed to allege an injury in fact despite not receiving the money to which he was entitled.  Because, as the Supreme Court stated in *TransUnion*, monetary injuries readily qualify as concrete injuries sufficient to confer standing under Article III, 141 S. Ct. at 2204, the better view is that, whether in the underpayment context or late payment context, "the inability to have and use money to which a party is entitled is a concrete injury" because "[e]veryday that a sum of money [was] wrongfully withheld, its rightful owner [lost] the time value of the money."  *Van*, 962 F.3d at 1161 (quoting *MSPA Claims 1*, 918 F.3d at 1318 and *Habitat Educ. Ctr.*, 607 F.3d at 457).  Because Plaintiff has plausibly

14

alleged that he was paid late and therefore lost the time value of his wages, he has adequately alleged an injury in fact sufficient to confer Article III standing.

Also unpersuasive is Defendant's attempt to recharacterize Plaintiff's allegation as stating no more than a "nebulous risk of harm." ECF No. 15 at 9. The Second Circuit decision from which Defendant draws this language, *Maddox v. Bank of New York Trust Mellon Trust Co.*, 19 F. 4th 58, 65 (2d Cir. 2021), illustrates why. In that case, the plaintiffs alleged that the defendant bank violated a New York statute when it filed a mortgage satisfaction nearly one year after the plaintiffs had paid off their mortgage. *Id.* at 64. The court laid out several injuries that might arise from such delay: cloud on the title to the property securing the mortgage, payment of duplicative filing fees for the discharge, and reputational harm resulting from the "false appearance that the borrower had not paid the underlying debt and [was] thus more indebted and less creditworthy." *Id.* The plaintiffs alleged none of these injuries. Accordingly, the court concluded that:

> the [plaintiffs] may have suffered a nebulous risk of future harm during the period of delayed recordation—*i.e.*, a risk that someone (a creditor in all likelihood) might access the record and act upon it—but that risk, which was not alleged to have materialized, cannot form the basis of Article III standing.

*Id.* at 65. Unlike the plaintiffs in *Maddox*, Plaintiff does allege that the harm materialized, stating that he "*was* denied the time-value of his money [and] *was* unable to invest, save, or purchase utilizing the wages he earned." ECF No. 1 ¶ 64 (emphasis added). Accordingly, unlike the potential future harms in *Maddox*, "the loss of the time value of the money owed to [Plaintiff] is not a harm that *might* occur, but one that *has* occurred; it is not a harm that *might* materialize, but one that *has* materialized." *Levy*, 2022 WL 16645829, at *4.

Plaintiff's allegation that Defendant's untimely payment in violation of New York law deprived him of the time value of his wages is therefore enough to confer Article III standing. Defendant's motion to dismiss this claim for lack of subject matter jurisdiction is therefore denied.

## C.  Private Right of Action Under NYLL § 191

Defendant also challenges an employee's ability to bring a claim for untimely wage payments under NYLL § 191(1)(a), arguing that the NYLL does not provide a private right of action for such claims.  Specifically, Defendant urges the Court to reject the First Department's decision in *Vega v. CM & Associates Construction Management*, 107 N.Y.S.3d 286 (1st Dep't 2019).  However, "[a]s a federal court applying state law, we are generally obliged to follow the state law decisions of state intermediate appellate courts . . . in the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise."  *Mabe v. Walmart Assocs., Inc.*, No. 20-CV-591, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (quoting *Broder v. Cablevisions Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005)); *see also Pahuta v. Massey-Ferguson*, 170 F.3d 125, 134 (2d Cir. 1999).  "Moreover, it would be inappropriate for a federal court to disregard [Appellate Division] cases based solely on the lack of authoritative support for the assertions they contain."  *DiBella v. Hopkins*, 403 F.3d 102, 113 (2d Cir. 2005).  As explained below, Defendant has failed to either identify contrary New York authority or persuasive data that the New York Court of Appeals would reject the First Department's conclusion in *Vega*.  The Court therefore declines Defendant's invitation to do so itself.

i.  **The First Department's Decision in *Vega***

In *Vega*, the plaintiff, a former manual worker, sought to recover liquidated damages, interest, and reasonable attorney's fees pursuant to NYLL§ 198(1-a) on the grounds that her former employer did not pay her on a weekly basis, in violation of NYLL § 191(1)(a). *Vega*, 107 N.Y.S.3d at 287. The First Department held first that the term "underpayment" as used in § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action." *Id.* The First Department found support for its conclusion in the dictionary definition of "underpay," which includes to "pay less than what is normal or required." *Id.* Under that definition, the First Department concluded that the moment an employer fails to pay manual workers on a weekly basis, "the employer pays less than what is required." *Id.* In doing so, it rejected the "defendant's implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action."[4] *Id.* While an employer may "assert an affirmative defense of payment if there are no wages for the 'employee to recover,'" that payment "does not eviscerate the employee's statutory remedies." *Id.*

The First Department therefore held that NYLL § 198(1-a) "expressly provides a private right of action for a violation of Labor Law § 191." *Id.* at 288. But even if it did not expressly provide a private right of action, the First Department found that "a remedy may be implied" because "plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the

---

[4] Defendant makes a similar argument, describing an employee's ability to recover liquidated damages for delayed payment as an absurd result. *See* ECF No. 8-14 at 14-17. The Court rejects this argument for the same reasons that the First Department did in *Vega*.

creation of such a right would be consistent with the legislative scheme." *Id.* at 288-89 (citing *Sheehy v. Big Flats Community Day*, 543 N.Y.S.2d 18 (1989)). As the First Department explained:

> Here, plaintiff is a 'manual worker' as defined by the statute, and allowing her to bring suit would promote the legislative purpose of section 191, which is to protect workers who are generally "dependent upon their wages for sustenance." It would also be consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do.

*Id.*

The only other state appellate court to have considered this issue, the Appellate Term, Second Department, concluded that because neither the Appellate Division, Second Department nor the Court of Appeals had pronounced a contrary rule, *Vega* controlled as a matter of *stare decisis*. *See Phillips v. Max Finkelstein, Inc.*, 153 N.Y.S.3d 750, 750-51 (App. Term 2d Dep't 2021). In doing so, the Appellate Term rejected the assertion that Second Department case law compelled a contrary result, explaining that the case on which the defendant employer relied "merely confirmed the determination of the Commissioner of Labor that an employer's payment frequency constituted a violation of [Section § 191(1)(a)]." *Id.* at 751 (citing *In re Ikea U.S. Inc. v. Industrial Bd. of Appeals*, 660 N.Y.S.2d 585 (2d Dep't 1997)). Because, in *Ikea*, the Second Department did not "address[] the viability of a private cause of action for the same statutory violation," the Appellate Term concluded that the First Department's decision in *Vega* controlled, and reversed the trial court's dismissal of the plaintiff's claim under § 191(1)(a). *Id.*

### ii.  The Court of Appeals' Decision in *Konkur*

In the absence of conflict among the Appellate Divisions or directly contradictory authority from the Court of Appeals, Defendant asserts that *Vega* is "irreconcilable" with the Court of Appeals' decision in *Konkur v. Utica Academy of Science Charter School*, 165 N.Y.S.3d 1 (2022).

In *Konkur*, the Court of Appeals addressed an employee's claim that her employer had violated NYLL§ 198-b, which makes it unlawful for any person to "request, demand, or receive . . . part or all of" the employee's wages "upon the statement, representation, or understanding that failure to comply . . . will prevent such employee from procuring or retaining employment."  NYLL§ 198-b(2).  A violation of § 198-b is a misdemeanor.  *Id.* §198-b(5).

As the Court of Appeals explained, "NYLL § 218 also provides for administrative enforcement of section 198-b by the Commissioner of the Department of Labor.  The statute empowers the Commissioner to grant affected employees restitution and liquidated damages in addition to imposing civil penalties." *Konkur*, 165 N.Y.S.3d at 2.  Because NYLL § 198-b contains "no express private right of action," the court considered whether "such a right of action is fairly implied in [the] statutory provisions and [its] legislative history." *Id.* (quoting *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013)).  The Court of Appeals, applying the same three-factor test that the First Department applied in *Vega*, concluded that the plaintiff satisfied the first two factors, as she was a member of the class of persons the statute was designed to protect and a private right of action would "arguably advance" the legislature's goal of protecting employees from wage kickbacks. *Id.* at 2.  But, as for the third factor, the court concluded that, "in the face of significant enforcement mechanisms provided for in the statute," a private right of action was not consistent with the legislative scheme. *Id.* at 2-3.

While the plaintiff argued that the court should infer a private right of action from NYLL § 198, which allows for attorney's fees when an employee prevails in a wage claim, the Court of Appeals distinguished NYLL §§ 198-b and 198(1-a). *Id.* at 3.  In doing so, the court noted that, as it had "made clear, the attorney's fees remedy provided for in section 198(1-a) must relate to 'wage claims based upon violations of one or more of the substantive provisions of Labor Law

article 6.'"  *Id.* (citation omitted).  Those provisions include NYLL § 191, which "generally regulates payment of wages by employers and creates reciprocal rights of employees." *Id.* (citation omitted).

The court also noted, as does Defendant here, that the legislature had recently amended NYLL  § 198 to provide a private right of action for certain notice requirements in NYLL §§ 194 and 195.  *Id.* at 6; ECF No. 8-4 at 17-18.  While acknowledging that the nonexistence of an express right of action is not by itself determinative, the court reiterated that the fact that "the legislature chose not to provide a similar remedy for [§ 198-b] is further evidence that it believed that the [statute's] existing remedies would be adequate."  *Id.* at 6 (citing *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 364 (2021)).

The Court is not persuaded that *Vega* is "irreconcilable" with *Konkur*.  To start, *Konkur* did not address whether the late payment of wages is an underpayment of wages and therefore a claim under § 191(1)(a) is a "wage claim" for which a private right of action exists under NYLL § 198(1-a).  Accordingly, *Konkur* does nothing to undermine the *Vega* court's conclusion that an *express* private right of action exists for violations of NYLL § 191(1)(a).  *See Harris v. Old Navy, LLC*, 2022 WL 16941712, at *10 (S.D.N.Y. Nov. 15, 2022) (expressing doubts about *Vega*'s reasoning but ultimately applying its result), *report and recommendation adopted*, 2023 WL 2139688 (S.D.N.Y. Feb. 20, 2023).  The closest *Konkur* came to addressing the issue was in its rejection of one federal court's conclusion that a claim under NYLL § 198-b is a wage claim. *Konkur*, 165 N.Y.S.3d at 5-6.  But, in doing so, the *Konkur* court specifically cited NYLL § 191 as one of the "substantive provisions of Labor Law Article 6" to which §198(1-a)'s attorney's fees remedy must relate.  *Id.*  For the same reason, the addition to NYLL § 198 of a private right of action for violations of certain notice requirements set out in other sections of the NYLL, such as

§ 195, does not undermine the First Department's conclusion that NYLL § 198(1-a) provides an express private right of action for violations of NYLL § 191(1)(a).  After all, if an express private right of action already exists, the legislature would see no need to amend the statute to provide one.

The Court therefore joins several other courts in this Circuit in concluding that the Court of Appeals decision in *Konkur* does not amount to persuasive evidence that the Court of Appeals would reach a different conclusion than the First Department in *Vega*.[5]  *See Mabe*, 2022 WL 874311, at *7 ("[T]he Court does not read *Konkur* as establishing that the New York Court of Appeals would reject the conclusions reached in *Vega*."); *Elhassa*, 2022 WL 563264, at *2 ("But, as Defendant admits, the question in *Konkur* had to do with the implication of a private right of action for a different provision of the NYLL.  *Vega* rested on a different ground.").   The Court will therefore apply the law as the First Department has interpreted it in *Vega*.  *See Pahuta*, 170 F.3d at 134.

### iii. Constitutional Avoidance

Defendant also contends that *Vega* is "incompatible with constitutional considerations." ECF No. 8-4 at 19.  According to Defendant, the remedy Plaintiff seeks for the alleged violation

---

[5] Defendant asserts that "this Court is not bound to follow *Vega* and should join certain other courts that have so declined." ECF No. 8-4 at 14.  It is worth noting that none of the three decisions that Defendant cites did, in fact, decline to follow *Vega*.  They do not even mention *Vega*.  In *Zivkovic v. Laura Christy, LLC*, the Southern District of New York considered and rejected a different decision of the First Department, which involved the application of the affirmative defenses set forth in NYLL § 198.  *See* No. 17-CV-553, 2022 WL 1697991, at *3 (S.D.N.Y. May 26, 2022).  The second district court case that Defendant cites, *Accosta v. Lorelei Events Grp Inc.*, likewise fails to mention *Vega*.  *See* No. 17-CV-7804, 2022 WL 195514, at *4-5 (S.D.N.Y. Jan. 21, 2022).  Instead, it cites a pre-*Vega* district court case for the proposition that, unlike the FLSA, the NYLL does not appear to provide a remedy for late-paid wages.  *Id.* at *4.  Finally, while Supreme Court, Queens County rejected a private right of action for NYLL § 191(1)(a) claims in *Grant v. Glob. Aircraft Dispatch*, like the district courts in the other two cases, it also failed to mention *Vega*. *See* No. 720074/2019, 2021 WL 6777500, at *3 (Sup. Ct., Queens Cnty. 2021).

Because these decisions do not analyze—let alone acknowledge—the *Vega* decision, they fall far short of persuasive evidence that the Court of Appeals would reject the First Department's decision, especially "considering the plethora of authority to the contrary."  *Rosario*, 2022 WL 1753319, at *4 n.3.

of NYLL § 191(1)(a), including liquidated damages, offends both constitutional notions of due process and the Eighth Amendment's Excessive Fines Clause.  *See id.*  In Defendant's view, the canon of constitutional avoidance therefore counsels against applying *Vega* and in favor of dismissal.  The Court disagrees.

Even assuming that the damages Plaintiff seeks would be treated as punitive for Due Process Clause purposes, Defendant's constitutional challenges are premature.  *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021).  There has been no award of damages and there is no record on which to assess whether such an award would be excessive in light of "the degree of reprehensibility of the defendant's misconduct," "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award," and "the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases."  *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 149 (2d Cir. 2010) (describing the Supreme Court's "guideposts" for reviewing punitive damages awards).

Moreover, even if Defendant were correct that a liquidated damages award would violate the Due Process Clause or the Eight Amendment, it has "offered no reason why [it] would be entitled to dismissal of [Plaintiff's] claim—rather than a reduction in damages."  *Rodrigue*, 2021 WL 3848268, at *6 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003); *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 585-86 (1996)).  Accordingly, the Court rejects Defendant's contention that the canon of constitutional avoidance counsels in favor of dismissing Plaintiff's claim.  *See Day v. Tractor Supply Co.*, No. 22-CV-489, 2023 WL 2560907, at *1 (W.D.N.Y. March 17, 2023) (declining to address NYLL § 191 liquidated damages issues, including Eighth Amendment arguments, at the motion to dismiss stage).

**D.  Plaintiff's Status as a "Manual Worker"**

Plaintiff alleges that over twenty-five percent of his work duties were physical tasks, "including but not limited to: (1) lifting and carrying equipment and freight up to 50 pounds; (2) operating heavy machinery; (3) breaking down ceramic parts by hand; and (4) standing for long periods of time."  ECF No. 1 ¶ 58.  Defendant argues that this "perfunctory and mechanical" allegation is insufficient to bring Plaintiff within the scope of § 191 because it is a mere legal conclusion and, in any event, those activities are not considered "physical labor" for the purposes of § 191.  ECF No. 8-4 at 20-21.  Neither assertion is persuasive.

Plaintiff's allegations are not mere legal conclusions because he has done more than assert that he is a "manual worker" for the purposes of § 191.  Although Defendant correctly notes that the twenty-five percent figure appears in New York Department of Labor opinion letters, that alone does not transform Plaintiff's factual allegations concerning his work duties into a legal conclusion merely couched as a factual allegation.  *See e.g.*, *Guan v. Lash Princess 56 Inc.*, No. 22-CIV-2552, 2023 WL 2242050 (S.D.N.Y. Feb. 27, 2023) (allegations that plaintiff spent more than 25% of her working hours performing physical labor and that defendant failed to pay her on a weekly basis sufficient to state a claim under § 191); *Levy*, 2022 WL 16645829, at *4 n.5 (allegations sufficient where plaintiff alleged that more than 25% of her work involves physical labor and listed specific tasks as examples).  Here, Plaintiff has alleged that "(1) lifting and carrying equipment and freight up to fifty pounds; (2) operating heavy machinery; (3) breaking down ceramic parts by hand; and (4) standing for long periods of time" comprised more than 25% of his duties.  ECF No. 1 ¶ 58.  This factual description of Plaintiff's work duties is enough "to conclude, for the purposes of this motion, that [he] falls within [NYLL's] manual worker definition."  *Levy*, 2022 WL 16645829, at *4 n.5; *see also Beh*, 2021 WL 3914297, at *3.

23

As to whether Plaintiff's duties amount to physical labor, the Court concludes that, in alleging that he engaged in tasks such as lifting and carrying equipment and freight, operating heavy machinery, and breaking down ceramic parts by hand, he has plausibly alleged that he was engaged in "physical labor."  The New York Department of Labor has opined that tasks such as loading and unloading luggage, opening and closing doors, and cleaning vehicles may constitute physical labor.  N.Y. Dep't of Labor Op. Ltr. No. RO-07-0072 (July 11, 2007).  So too may food preparation, clean-up, hair washing, and hair styling.  N.Y. Dep't of Labor Op. Ltr., No. RO-08-0061 (Dec. 4, 2008).  The tasks Plaintiff alleges appear to be at least as physical as food preparation or hair styling.  Although Plaintiff will ultimately bear the burden of proving that he was in fact engaged in physical labor and therefore a manual worker, for now, he has "plausibly pled that [he is] within the bounds of, and protected by, § 191."  *Levy*, 2022 WL 16645829, at *4 n.5.

Accordingly, Petitioner's motion to dismiss on the ground that Plaintiff has failed to adequately allege that he is a manual worker for the purposes of § 191(1)(a) is denied.

**E.  Conclusion**

The Court rejects each of Defendant's arguments in favor of dismissing Plaintiff's claim under NYLL § 191.  Plaintiff has adequately alleged an injury-in-fact sufficient to establish standing.  Defendant has not presented persuasive evidence that the Court of Appeals would reach a different conclusion than that of the First Department in *Vega*, and its assertion that the canon of constitutional avoidance provides reason to disregard *Vega* is unpersuasive.  Moreover, Plaintiff has sufficiently alleged that he was a manual worker for the purposes of NYLL § 191.  The Court therefore denies Defendant's motion to dismiss Plaintiff's late payment claim under NYLL § 191.

### III.  Wage Statement Claim Under NYLL § 195(3)

Plaintiff alleges that Defendant failed to supply Plaintiff with a wage statement accurately listing his lawful overtime rate as required under NYLL § 195(3).  ECF No. 1 ¶¶ 66, 82.  According to Plaintiff, because the inaccurate wage statements incorrectly stated the overtime rate at which Plaintiff was entitled to be paid, Defendant was able to "continue [its] unlawful wage and hour scheme" without the awareness of Plaintiff and other hourly workers.  *Id.* ¶¶ 14.  The Court interprets this to mean that Plaintiff was underpaid for his overtime work at least in part because of the inaccurate wage statements.  Defendant argues that Plaintiff has failed to allege that the allegedly inaccurate wage statements caused an injury in fact sufficient to confer Article III standing.  ECF No. 8-4 at 10-11.  As explained below, the Court concludes that, while Plaintiff's alleged underpayment may constitute an injury in fact, Plaintiff has not plausibly alleged that this injury is "fairly traceable" to Defendant's alleged violation of § 195(3).

NYLL § 195(3) requires employers to provide employees wage statements with every payment of wages that list information including the pay period, and, as relevant here, overtime rate or rates of pay.  An employee who does not receive wage statements with each payment of wages may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  NYLL § 198(1-d).

The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341).   "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.*  Even where a statute entitles a person to certain information, a deprivation of information,

25

without more is not enough to establish standing.  *Id.*  at 2214 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.") (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).  Accordingly, an allegation that an employer has violated NYLL § 195(3) is not enough, on its own, to confer Article III standing.  *See Beh*, 2022 WL 5039319, at *7 (collecting cases).

Courts in this Circuit have therefore held that, without more, technical violations of NYLL § 195(3), such as a truncated employer name, a missing phone number, missing gross deductions, missing gross wages, and even failure to provide the notice at all fail to confer standing. *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-931, 2021 WL 3667054, at *7 (E.D.N.Y. Aug. 18, 2021) (truncated employer name); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (missing phone number, deductions, and gross wages); *Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. March 30, 2022) (failure to provide required wage statement).

However, where plaintiffs have alleged that the inaccurate wage statements led to them being underpaid, some courts in this Circuit have allowed claims under NYLL § 195(3) to proceed. *See e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2022 WL 19300779, at *4 (S.D.N.Y. Nov. 15, 2022), *report and recommendation adopted*, 2023 WL 2674743 (S.D.N.Y. March 29, 2023); *Mateer v. Peloton Interactive, Inc.*, No. 22-CIV-740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022).  Although, as Defendant points out, *Mateer* involved the commingling of commissions and other forms of compensation, ECF No. 15 at 4-5, the *Metcalf* court concluded that "[*Mateer*] stands for the proposition that when an employee prevents a non-exempt employee from knowing the compensation that he has earned by failing to provide accurate wage statements, and the employee is actually underpaid by consequence, he has suffered an injury

26

in fact." 2023 WL 2674743, at \*6.  Accordingly, the court concluded that the plaintiffs' claim could survive a motion to dismiss where they alleged that "for nearly nine months they did not know they were not receiving due compensation, and they were thereby prevented from obtaining their earned pay." *Id.*

In *Quieju v. La Jugeria Inc.*, by contrast, the court concluded that an allegation that an employer's violation of § 195(3) "resulted in the underpayment of wages" is not enough to establish standing. No. 23-CV-264, 2023 WL 3073518, at \*1 (E.D.N.Y. Apr. 25, 2023). The court reasoned that "the Supreme Court jurisprudence on standing that requires the showing of an actual and concrete injury [cannot] be so easily circumvented by a conclusory allegation that a statutory violation 'resulted in injury.'"  *Id.*  The court also noted that the plaintiff's allegations were "entirely speculative," requiring a lengthy hypothetical chain of events to arrive at the conclusion that the defendant employer's alleged violation of NYLL § 195(3) caused his injury.  *Id.* at \*2.

Although Defendant challenges this claim on the basis that Plaintiff has not established an injury in fact, the Court concludes that the real barrier to standing here is causation—that is, whether Plaintiff's alleged underpayment is "fairly traceable" to the allegedly inaccurate wage statements. *See Quieju*, 2023 WL 3073518, at \*2.  The Court is not persuaded that it is.  As pled, Plaintiff's allegations, even in light of *Mateer* and *Metcalf*, do not "cross the line from 'possible' to 'plausible.'"  *Id.*  Plaintiff merely alleges that "Defendant's failure to provide Plaintiff with accurate wage statements misinformed Plaintiff about the correct overtime rate he was entitled to receive, and allowed [] Defendant to continue their unlawful pay scheme."  ECF No. 1 ¶ 10.  But like the plaintiff in *Quieju*, Plaintiff "assumes his conclusion without analysis."  2023 WL 3073518, at \*2.  What Plaintiff is "really saying" is that if Defendant had given him an accurate wage statement, that statement would have informed him that he was not being paid the proper

overtime rate.  *See id.*  "Enlightened by that knowledge, [Plaintiff] then would have demanded his required wages.  Having made such a demand, [Defendant] *would have* then paid him his required wages, and [Plaintiff] *would have* avoided the injury he suffered by the failure to properly pay him."  *Id.*  Such a "speculative chain of possibilities does not establish that [Plaintiff's] injury" was "fairly traceable" to Defendant's alleged violations of NYLL § 195(3).  *Quieju*, 2023 WL 3073518, at *2 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).  If, as Plaintiff alleges, he was paid an unlawfully low overtime rate, he was injured by his employer's alleged failure to comply with its obligation to pay him the correct overtime rate.  "It is the violation of [that obligation] to which his injury is 'fairly traceable.'"  *Id.*  Accordingly, because Plaintiff has failed to plausibly allege that his underpayment is "fairly traceable" to Defendant's alleged failure to provide accurate wage statements, he has failed to demonstrate that he has standing to bring this claim.

However, the Court will grant Plaintiff an opportunity to amend his complaint to replead his wage statement claim.  As the Second Circuit has explained, "the 'permissive standard' of Rule 15 'is consistent with our strong preference for resolving disputes on the merits.'"  *Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs.*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").  The Court is skeptical that Plaintiff can establish standing to bring his claim under NYLL § 195(3), but because it is not apparent that any further opportunity to amend would be futile, Plaintiff will be permitted to replead this claim.  *See Williams*, 659 F.3d at 214 (2d Cir. 2011); *Neor v. Acacia Network, Inc.*, No. 22-CV-4814, 2023 WL 1797267, at *5 (S.D.N.Y. 2023).

### IV.  Standing to Represent the New York Class

Defendant argues that, because Plaintiff "cannot claim to be injured by [Defendant's] alleged actions before or after his employment, [he] only has standing to represent a class from April 2021 until April 2022."  ECF No. 8-4 at 24.  Plaintiff contends that such an argument is not properly adjudicated at this stage of the proceedings, but, should the Court reach the issue, that Plaintiff can adequately represent class members whose claims arise outside of the period in which he was employed by Defendant.  ECF No. 12 at 24-26.  The Court agrees that Plaintiff has, at this stage, demonstrated that he has standing to represent his proposed class.  Defendants motion to strike claims outside of the period of Plaintiff's employment is therefore denied without prejudice to raising its argument again at the class certification stage.

To establish class standing in a putative class action a plaintiff must plausibly allege "(1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012). "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf."  *Ret. Bd. Of Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).

Courts in this Circuit disagree as to whether a district court should conduct this analysis at the motion to dismiss stage or whether it should reserve the class standing analysis until a motion for class certification.  *See e.g.*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 562-63 (S.D.N.Y. 2016) (acknowledging split among district courts in the Second Circuit and concluding

that plaintiff had sufficiently alleged class standing at the motion to dismiss stage); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *5 (S.D.N.Y. March 30, 2018) (collecting cases and declining to consider class standing question where parties did not dispute plaintiff's Article III standing).  "However, because class standing and class certification are two distinct inquiries, the Court may properly rule on Plaintiff's class standing at the motion to dismiss stage." *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 550 (W.D.N.Y. 2018) (citing *Ret. Bd. Of Policemen's Annuity and Ben. Fund*, 775 F.3d at 161; *NECA*, 693 F.3d at 158 n.9; *Buonasera*, 208 F. Supp. 3d at 563).  This Court has also noted that the "class standing test derives from constitutional standing principles."  *Holve*, 334 F. Supp. 3d at 550 n.7.  "A plaintiff's constitutional standing is a jurisdictional matter and, as such, requires examination when called into question."  *Id.* (citing *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)).  Accordingly, the Court turns to whether Plaintiff has sufficiently alleged class standing.

Plaintiff satisfies the first prong of the class standing test with respect to his remaining NYLL claims: his federal and state overtime claims and his late payment claim under NYLL § 191(1)(a).  As explained above, he has adequately pled that he "personally suffered an actual injury from Defendant's" alleged violations of the FLSA and NYLL.  *See Holve*, 334 F. Supp. 3d at 551.

Defendant appears to focus its challenge on the second prong, arguing that because Plaintiff was employed only from April 2021 to April 2022, the class must also be limited to that period.  ECF No. 8-4 at 27.  The Second Circuit has not specifically addressed this issue, but some district courts in this Circuit have limited the temporal scope of class actions under the NYLL to the employment dates of the named plaintiffs.  *See e.g.*, *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 17-CV-0359, 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018); *Roach v. T.L. Cannon*

*Corp.*, No. 10-CV-0591, 2015 WL 10818750, at *6 (N.D.N.Y. Sept. 4, 2015).  Others have refused to do so.  *See e.g.*, *Umbrino v. L.A.R.E. Partners Network, Inc.*, 585 F. Supp. 3d 335, 357-58 (W.D.N.Y. 2022); *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 193 (D. Conn. 2020).

The Court will not, at this stage in the proceedings, limit the putative New York Class to hourly workers employed from April 2021 to April 2022.  Plaintiff brings his claims under the NYLL on behalf of a "New York Class" of hourly workers whom Defendant employed between February 9, 2016 and the date of final judgment in this action.  ECF No. 7 ¶ 45.  He alleges that both he and members of the putative New York Class have been injured in the same way, in that "they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct" and that those policies and practices "affected everyone in the New York Class similarly."  *Id.* ¶ 49.  "Defendant's alleged failure to comply with the NYLL during the course of [Plaintiff's] employment plainly implicates the same set of concerns as [Defendant's] alleged failure to comply with the NYLL in precisely the same manner during the unnamed class members' employment."  *Umbrino*, 585 F. Supp. 3d at 358.  The Court therefore concludes that Plaintiff has adequately alleged standing to bring his NYLL claims on behalf of the putative New York Class.  *See Umbrino*, 585 F. Supp. 3d at 358; *see also Holve*, 334 F. Supp. 3d at 551-52 (finding consumer protection plaintiff had class standing to represent members of a putative class who purchased allegedly deceptively labeled products that she did not purchase where labeling claims were sufficiently similar).

Defendant's motion to strike class claims outside of the period of April 2021 to April 2022 for lack of standing is therefore denied without prejudice.  Defendant may raise his arguments directed at the New York Class at the class certification stage.  *See Holve*, 334 F. Supp. 3d at 552 (citing *Buonasera*, 208 F. Supp. 3d at 563).

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss, ECF No. 8, is GRANTED in part and DENIED in part. Plaintiff's overtime claims under the FLSA and NYLL and his untimely pay claim under NYLL § 191 may proceed. Plaintiff's wage statement claim under NYLL § 195(3) is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend his complaint to replead his NYLL § 195(3) claim, and, if he chooses to do so, he must file his amended complaint by August 10, 2023. Defendant is directed to answer or otherwise respond to the amended complaint by August 31, 2023.

Defendant's motion to strike class claims outside of the period of April 2021 to April 2022 is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 11, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York