IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FREELAND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>    -against-<br><br>FINDLAY's TALL TIMBERS DISTRIBUTION CENTER D/B/A/ OHIO LOGISTICS,<br><br>              Defendant. | No. 22 Civ. 6415 (FPG) |

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

FITAPELLI & SCHAFFER, LLP
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT.......................................................................................................................... 3

    I.       PLAINTIFF HAS STANDING FOR HIS CLAIMS UNDER NYLL § 195(3).......... 3

            A.      NYLL § 195(3) Grants Plaintiff the Right to Receive Accurate Pay Statements ...................................................................................4

            B.      Plaintiff Was Harmed By Receiving Misleading Paystubs............5

    II.      DEFENDANT SHOULD NOT BE GRANTED A STAY.......................................... 7

CONCLUSION .................................................................................................................... 10

## PRELIMINARY STATEMENT

On July 11, 2023 the Court denied in part and granted in part Defendant Findlay's Tall Timbers Distribution Center, LLC ("Defendant" or "FTTDC") motion to dismiss Plaintiff's claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See* ECF No. 19. Specifically, the Court dismissed Plaintiff's claim under NYLL § 195(3) without prejudice, and granted Plaintiff leave to amend his complaint to replead this claim. *See id.*  Moreover, the Court's order flatly denied Defendant's attempt to dismiss Plaintiff's claims under NYLL § 191. *See id.*

Defendant moves again to dismiss Plaintiff's amended NYLL 195(3) claims for lack of standing. However, Defendant does not address that Plaintiff has alleged a tangible downstream consequence of the inaccurate paystubs proffered by Defendant, namely that Defendant's unlawful underpayments were directly assisted by Defendant's inaccurate paystubs. In this regard, Plaintiff is similar to the class of individuals in *TransUnion* who were found to have standing, as the harm suffered by Plaintiff in being delayed proper payments bears a close relationship to the misleading information provided by Defendant. To be clear, Plaintiff has alleged that Defendant's improper wage statements were part and parcel to Defendant's unlawfully pay scheme, because the direct consequence of Defendant's actions was a delay in proper compensation.

Defendant also attempts a second bite at the apple on Plaintiff's NYLL § 191 claim. Despite the Court's previous ruling, Defendant now asks that the Court stay this matter in light of *Grant v. Global Aircraft Dispatch, Inc*, App. Div. No. 21-03202 (N.Y. 2nd Dept.). However, Defendant offers very little explanation as to why the Court should grant the extraordinary step. Despite Defendant's claim, there is no controversy surrounding whether a private right of action exists to bring claims under NYLL § 191. *See* ECF No. 12-2 (List of Decisions Denying Motions

to Dismiss Claims under NYLL § 191). In fact, even more decisions confirming the existence of a private right of action under NYLL § 191 have been rendered since the Court's order. *See* **Exhibit A,** Updated List of NYLL § 191 Decisions. This is why multiple courts have already considered and denied such similar requests. *See e.g. Davis v. Banna Republic, LLC*, No. 21 Civ. 6160 (KAM) (VS), 2023 WL 5979207, at *1-2 (E.D.N.Y. Aug. 25, 2023); *Rankine v. Levi Strauss & Co.*, 22 Civ. 3362 (LTS), 2023 WL 3582323, at *7-8 (S.D.N.Y. May 22, 2023); *Pozo v. BlueMercury, Inc.*, No. 22 Civ. 7382 (VEC), 2023 WL 4980217, at *6 (S.D.N.Y. Aug. 3, 2023). Defendant's suggestion that there is "an open question" surrounding NYLL § 191 is mere wishful thinking on their behalf.

Moreover, Defendant does not explain why they waited until **after** the Court's order denying their motion to dismiss Plaintiff's NYLL § 191 claims to argue that the Court needed guidance from *Grant*. After all, *Grant* has been fully briefed since April 25, 2022, and oral argument was completed in April 2023, months before the Court's order denying Defendant's motion to dismiss. The Court should not reward Defendant for cynically attempting to relitigate issues this Court has already decided.

As discussed herein, Defendant's arguments fail and Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

## LEGAL STANDARD

Under Rule 12(b)(1), a case may be properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where Article III standing is at issue, a plaintiff must show "(1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *See Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021)

2

(internal quotation marks omitted)). The Second Circuit has described the injury in fact requirement as "a low threshold[.]" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). A plaintiff may can establish standing for an "informational injury" if the plaintiff can allege "downstream consequences from failing to receive the required information." *See Lipstein v. 20X Hospitality LLC,* No. 22 Civ. 4812 (JLR) (JW*),* 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (citing *TransUnion LLC r. Ranirez,* 141 S. Ct. 2190, 2214 (2021)).

For a motion to stay, the movant 'bears the burden of establishing its need for such a stay." *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)).   In evaluating whether to grant a motion to stay a court considers (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *See* K*appel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

## ARGUMENT

## I.      PLAINTIFF HAS STANDING FOR HIS CLAIMS UNDER NYLL § 195(3)

Plaintiff was harmed by Defendant's failure to provide accurate wage statements. Plaintiff's amended complaint established that receiving inaccurate paystubs has a tangible downstream effect of Plaintiff's lawful payments being delayed. *See Lipstein*, 2023 WL 6124048 at *9 (finding that monetary harm was a "tangible downstream consequence of the failure to receive required [NYLL § 195(3)] information"). This is made clear from the New York Legislature's establishment of NYLL § 195(3) to protect "an employee's concrete interest in being paid what he or she is owed under the NYLL." *See Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22 Civ. 6136 (RPK) (RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (citing *Bueno v.*

3

*Buzinover*, No. 22 Civ. 2216 (PAE) (KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023).

NYLL § 195(3) requires employers to provide their employees with a wage statement that details

the **correct** compensation being provided. Defendant failed to do this, because Plaintiff's

paystubs do not reflect his correct overtime rate and make it impossible to determine the amount

Plaintiff is owed. *See* ECF No. 20, ¶¶ 12-19, 70-72. To be clear, these inaccurate paystubs directly

aid and abet Defendant's unlawful pay scheme, and deny Plaintiff the right to his correct

information. Certainly, Defendant would not be able to have carried on their underpayments if

they had provided Plaintiff, and similarly situated workers, with accurate paystubs as it was their

right to receive. This is not a case of potential future harm, because Plaintiff and similarly situated

workers were harmed every time they were misled and underpaid. *See Bueno,* 2023 WL 2387113,

at *3 (finding that providing inaccurate paystubs "can impinge on an employee's interests not only

in being paid what is owed, but also in being able to advocate for the receipt of proper pay"),

**A.  NYLL § 195(3) Grants Plaintiff the Right to Receive Accurate Pay Statements**

NYLL § 195 was drafted to protect a concrete interest for workers in New York to be paid

what they are owed under the NYLL." *See Imbarrato v. Banta Mngmt. Services, Inc.*, No. 18 Civ.

5422 (NSR), 2020 WL 1330744, at *9 (S.D.N.Y. Mar. 20, 2020) (citing N.Y. Spons. Mem., 2010

S.B. 8380) ("[i]t is clear that [NYLL § 195] was enacted to further protect an employee's concrete

interest in being paid what he or she is owed under the NYLL"). In fact, NYLL § 195(3) clearly

"recognizes that this interest is put at risk when employees are 'mis- or un-informed regarding

their rights and the responsibilities of their employers'" *See id.* at *8 (quoting *Hicks v. T.L.

Cannon Management Corp.*, No. 13 Civ. 6455 (EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar.

13, 2018)). This is made clear by the fact that full payment is an affirmative defense, showing

that the legislature clearly understood that inaccurate paystubs are a tool employers use to

propagate unlawful pay policies while maintaining the veneer of abiding by the NYLL. *See*

4

*Bueno*, 2023 WL 2387113, at * 3 ("written notices mandated under [NYLL § 195(3)] serve as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves") (internal citations omitted); *see also* NYLL § 198.

Here, Plaintiff's allegations are directly in line with the issue identified by the legislature. Plaintiff has alleged that he "relied on his paystubs to ensure that Defendant paid him the correct rate for his hours worked." *See* ECF No. 20 ¶ 14. Despite this being Plaintiff's right under NYLL § 195(3), Defendant provided paystubs that not only reflected an incorrect amount, but obscured which weeks bonuses and overtime were earned, making it impossible to determine the correct compensation Plaintiff should receive. *See id.* ¶ 15-19. Accordingly, Defendant denied Plaintiff his right to accurate pay information, hindering his ability to contest wage deficiencies in a timely manner, which caused concrete harm. *See Lipstein*, 2023 WL 6124048 at *10. ("delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages deals an injury that is distinct from any underpayment itself") (citing *Ramirez v. Urion Construction LLC*, No. 22 Civ. 3342 (LGS), 2023 WL 3570639, at *7 (S.D.N.Y May 19, 2023)).

### B.  Plaintiff Was Harmed By Receiving Misleading Paystubs

As Judge Ramos observed in *Metcalf v. Transperfect Translations International, Inc.*, an employee who receives inaccurate wage statements is similar to the subset of *TransUnion* class members who were found to have standing. *See* No. 19 Civ. 10104 (ER) (KHP), 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023). To be clear, Plaintiff is not alleging a hypothetical scenario that if Defendant had provided the correct paystubs, then Plaintiff would have complained, and the Defendant would have paid the correct compensation. Instead, Plaintiff is alleging that Defendant actively mislead Plaintiff in order to pay him less than what was required.

Plaintiff has alleged he relied on these paystubs to understand if he was paid correctly. *See* ECF No. 20, ¶ 14. Obviously, Defendant could not give Plaintiff a paycheck that stated a higher amount of pay than they actually provided. Therefore, Defendant's illegal pay scheme would be impossible without their inaccurate paystubs. Plaintiff being underpaid, having to take time to contact attorneys, filing this lawsuit, and waiting to receive his proper compensation are all clear downstream harms caused by Defendant's violation of NYLL § 195(3). *See Lipstein*, 2023 WL 6124048 at *10 ("the delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages deals an injury… that [p]laintiff ultimately brought suit here shows not that he was unharmed by the statutory violations, but rather that he seeks recompense for past injury suffered – injury for which the contours could have been more precisely determined (and which [p]laintiff alleges he could have raised earlier and more clearly with his employer or before the Court) if [d]efendants had not violated their statutory obligation to provide Plaintiff with accurate wage statements and notice").

The Court's previous order and Defendant's instant motion referenced *Quieju v. La Jagueria, Inc.*, to point out that Judge Cogan granted a motion to dismiss claims under NYLL § 195(3). *See* No. 23 Civ. 264 (BMC), 2023 WL 3073518 (Apr. 25, 2023). Respectfully, Plaintiff here is not similar to the plaintiff in *Quieju*, as the *Quieju* plaintiff did not allege any harm from the inaccurate pay statements they allegedly received. *Compare Quieju* Complaint (attached as **Exhibit B**) to ECF No. 20. This was recognized by the *Quieju* court, which stated that the *Quieju* plaintiff "offered no theory as to *how* he was injured by defendants' failure to provide the required documents." *See Quieju*, 22023 WL 3073518, at *2. Instead, the *Quieju* plaintiff only argued later that there were "conspiratorial overtones in an employer's refusal [to provide proper wage statements]" and that the court should take note of the **chance** an employee would be injured. *See Quieju* Plaintiff's Response to Order To Show Cause, attached as **Exhibit C**. Plaintiff here has

6

directly alleged that Defendant's inaccurate paystubs harmed him by misleading him about the compensation he was due. *See* ECF No. 20, ¶¶ 12-19, 70-72.

Plaintiff's allegations are instead substantially similar to the allegations of the plaintiffs in *Mateer v. Peloton Interactive, Inc.*, because Plaintiff has alleged specific harm caused by Defendant's provision of inaccurate pays statements. *See* No. 22 Civ. 740 (LGS), 2022 WL 2751871, at *2 (Jul. 14, 2022) ("in contrast to technical violations of [NYLL § 195] that have been dismissed for lack of standing in some cases… [plaintiff's allegations] go beyond asserting a bare statutory violation and sufficiently allege a concrete harm") (internal citations omitted).

## II.   DEFENDANT SHOULD NOT BE GRANTED A STAY

Defendant asks that the Court stay this matter pending the resolution of *Grant*. *See* ECF No. 21-3. Defendant reasons that whether NYLL § 191 provides a private right of action is "the **open question** of New York law at the heart of Plaintiff's Complaint" and "the Second Department's ruling in Grant will provide an extremely important data point in that regard, which will ultimately aid the Court in making a well-reasoned decision." (emphasis added). Defendant's argument does not address that the Court has already denied a motion to dismiss based on the exact argument that there is no private right of action for NYLL § 191. *See* ECF No. 19. Frankly, Defendant's suggestion that this an open question is absurd. As Plaintiff has pointed out, there are a myriad of decisions confirming the existence of a private right of action for claims under NYLL § 191, the majority of which were decided despite the pendency of the *Grant* decision. *See* **Exhibit A**.

Moreover, Defendant does not establish the burden for a stay. A court should consider the following factors in determining whether to issue a stay: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of

the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

The first factor weighs in Plaintiff's favor as Plaintiff has an interest in an expeditious resolution to her litigation. *See Davis*, 2023 WL 5979207, at *2 (E.D.N.Y. Aug. 25, 2023) ("[p]laintiffs have an interest in timely receiving unpaid wages if the Court ultimately finds for [p]laintiffs … it is not clear when [the *Grant*] decision will be issued, creating the possibility of prejudice if the delay is extensive"); *see also Rankine*, 2023 WL 3582323, at *7 (finding that plaintiff's interests in a NYLL § 191 case weigh against a stay even where plaintiff "does not identify any prejudice that he would suffer from a stay being imposed"). Here, the Plaintiff and putative class members will suffer harm if a stay is issued. In this regard, the underpaid employees worked for Defendant for as long as over six years ago. A potentially extended stay will delay any relief that is coming to Defendant's employees. Moreover, Plaintiff has alleged collective FLSA claims for unpaid overtime, and has a distinct interest in certifying a collective action under 29 U.S.C. § 216(b) as soon as possible to preserve potential opt-in Plaintiff's statute of limitations. *See Gillett v. Zara USA, Inc*. No. 20 Civ. 3734 (KPF), 2021 WL 1731836, at *7 (S.D.N.Y. May 3, 2021) ("equitable tolling issues often arise as to individual opt-in plaintiffs").

The second factor also does not support Defendant, because the outcome of *Grant* is not determinative of the critical issue of the existence of a private right of action. *See* 2023 WL 4980217, at *6 (citing *Rankine*, 2023 WL 3582323, at *8). Further, Defendant does not argue they will suffer any irreparable injury absent a stay. It is well established that "litigation costs do not rise to the level of irreparable injury" *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 WHP, 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974). Accordingly, the second factor weighs against a stay.

The third factor also does not weigh in favor of a stay. As Judge Matsumoto recognized in *Davis*, "the decision in *Grant* — although potentially useful to this Court's analysis — will not be determinative on the outcome in this case because, if it departs from *Vega*, it will simply create a conflict in intermediate appellate law that this Court must resolve." *See Davis*, 2023 WL 5979207; *see also Rankine*, 2023 WL 3582323, at *7-8 ("should such a best-case scenario for Defendant come to pass, the Court would then be presented only with conflicting guidance as to how to project the likely determination of the Court of Appeals"). Moreover, the Court "has a substantial interest in proceeding with this action while its knowledge of the underlying facts is still fresh." *See GTFM Inc. v. Park*, No. 02 Civ. 7020 (DLC), 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002). Thus, under the circumstances, "staying the case would merely delay litigation and likely result in greater inefficiencies to the Court and litigants." *Laumann v. Nat'l Hockey League*, 2013 WL 837640, at *3 (S.D.N.Y. Mar. 6, 2013)

The fourth and fifth factors also do not weigh in favor of a stay and are "at best, neutral." *Pozo*, 2023 WL 4980217, at *6 (S.D.N.Y. Aug. 3, 2023) (citing *Rankine*, 2023 WL 3582323, at *8 n.4 (finding that the third through fifth *Koppel* factors "do not weigh in favor of a stay.").

It is highly unlikely that the Second Department departs from the unanimous *Vega* decision by the First Department, and every federal court to consider the issue since then has ruled in the plaintiffs' favor. *See,* **Exhibit A**. Moreover, the caselaw from the Second Department suggests *Grant* will find for the plaintiffs. *See, e.g.*, *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (App. Term., 2d Dep't 2021) (following *Vega*); *Epifani v. Johnson*, 65 A.D. 3d 224 (2d Dep't 2009) (delay in final wage payment was a viable Section 191(3) claim). Regardless, even if the Second Department does not follow *Vega*, that would at worst create a split that would likely need to be resolved eventually by the New York Court of Appeals. This Court has noted that recent Court of Appeals dicta seems to support the existence of a private right of action for NYLL § 191

9

violations. *See* ECF No. 19, pgs. 19-20 ("the [Court of Appeals] noted that, as it had 'made clear, the attorney's fees remedy provided for in section 198(1-a) must relate to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6'…those provisions **include NYLL § 191**, which 'generally regulates payment of wages by employers and creates reciprocal rights of employees'" (citing *Konkur v. Utica Academy of Science Charter School,* 165 N.Y.S.3d 1 (2022)) (emphasis added).

Accordingly, the Courts should deny Defendant's request to stay this case pending resolution of the *Grant* decision. *See, e.g.*, *Jones v. Nike Retail Svcs., Inc.*, No. 22 Civ. 3343 (PKC) (ARL), 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30, 2022) ("The Court denies Defendant's request for a stay because there is … an appeal of another similar case to the Second Department of the New York Appellate Division").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Dated:  New York, New York
        October 2, 2023

                                        Respectfully submitted,

                                        */s/ Brian S. Schaffer*
                                        Brian S. Schaffer

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Hunter G Benharris
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for Plaintiff and the*
                                        *Putative Class*