UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC FREELAND, individually and on behalf of
all others similarly situated,

                                              Plaintiff,        Case # 22-CV-6415-FPG

v.                                                        DECISION AND ORDER

FINDLAY'S TALL TIMBERS DISTRIBUTION
CENTER, LLC d/b/a OHIO LOGISTICS,

                                              Defendant.
_____

## INTRODUCTION

Plaintiff Eric Freeland has filed an amended complaint in which he repleads his claim that Defendant Findlay's Tall Timbers Distribution Center, LLC violated New York Labor Law ("NYLL") § 195(3) by failing to provide accurate wage statements. ECF No. 20. Defendant has moved to dismiss this claim. ECF No. 21.[1] As explained below, Defendant's motion is GRANTED and Plaintiff's NYLL § 195(3) claim is DISMISSED without prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant is an Ohio-based company that provides warehousing and logistical support services throughout the eastern United States. ECF No. 20 ¶ 2.[2] From April 2021 through April 2022, Defendant employed Plaintiff at one of its warehouses in Painted Post, New York. *Id.* ¶ 59. Plaintiff's duties involved, among other things, lifting and carrying equipment and freight, operating heavy machinery, and breaking down ceramic parts by hand. *Id.* ¶ 62.

---

[1] Defendant also moved for a stay pending the Second Department's decision in *Grant v. Global Aircraft Dispatch, Inc.*, No. 2021–03202 (2d Dep't 2024). ECF No. 21-3 at 8–10. Because the Second Department has now issued its decision in *Grant*, and because Defendant has filed a motion for reconsideration in light of that decision, the Court DENIES the motion for a stay as moot.

[2] Unless otherwise noted, the facts are drawn from the amended complaint, ECF No. 20.

On September 28, 2022, Plaintiff filed this putative class action against Defendant alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See generally* ECF No. 1. He alleged that Defendant (1) violated the FSLA by failing to include non-discretionary bonuses in the rate of pay used to calculate his overtime rate; (2) violated the NYLL for the same reason; (3) violated NYLL § 191(1)(a) by paying him on a biweekly basis; and (4) violated NYLL § 195(3) by providing wage statements that inaccurately stated the overtime rate to which he was entitled. *See id.* ¶¶ 68–83.

Defendant moved to dismiss the complaint in its entirety. ECF No. 9. The Court granted in part and denied in part Defendant's motion, permitting Plaintiff's overtime and pay frequency claims to proceed, but dismissing Plaintiff's inaccurate wage statement claim without prejudice. *See* ECF No. 19 at 32. The Court also granted Plaintiff leave to amend his wage statement claim. *Id.*

Plaintiff filed his amended complaint on August 10, 2023. ECF No. 20. In the amended complaint, Plaintiff realleges that (1) Defendant violated the FLSA and NYLL by failing to include non-discretionary bonuses in the rate of pay used to calculate his overtime pay; (2) Defendant violated NYLL § 191(1)(a) by paying him on a biweekly basis; and (3) Defendant violated NYLL § 195(3) by providing wage statements that inaccurately stated the overtime rate to which he was entitled. *See id.* ¶¶ 73–88.

According to Plaintiff, throughout his employment, Defendant failed to provide him with wage statements indicating his lawful overtime rate. ECF No. 20 ¶ 70. The wage statements therefore misinformed Plaintiff about the overtime pay he was entitled to. *Id.* ¶ 17. Because the wage statements also failed to identify the exact weeks during which Plaintiff worked overtime and received bonuses, they "rendered [him] unable to understand his proper overtime rate." *Id.* ¶

2

71. This, in Plaintiff's view, permitted Defendant to continue their unlawful scheme to pay him a lower overtime rate than required. *See id.* ¶¶ 19, 72.

Defendant now seeks dismissal of Plaintiff's inaccurate wage statement claim for lack of standing.

## LEGAL STANDARDS

### I. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), such as when a plaintiff lacks standing, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). In considering a facial motion to dismiss for lack of standing under Rule 12(b)(1), the Court must "determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter*, 822 F.3d at 56–57. In doing so, the Court must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Id.* at 57; *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975).

### II. Article III Standing

Article III restricts federal courts to the resolution of cases and controversies. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). "That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation." *Id.* The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992)).  To plausibly plead an injury in fact, a plaintiff must show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).

## DISCUSSION

Defendant has moved to dismiss Plaintiff's wage statement claim under NYLL § 195(3) for lack of standing.  ECF No. 21.  Plaintiff alleges that Defendant violated NYLL § 195(3) by failing to provide wage statements identifying (1) his lawful overtime rate and (2) the weeks during which he worked overtime and received bonuses.  Defendant argues that (1) an allegation that Defendant has violated NYLL § 195(3) is insufficient to confer Article III standing and (2) Plaintiff's inability to determine his proper overtime rate was not causally connected to the allegedly deficient wage statements.  As explained below, the Court agrees with Defendant that Plaintiff does not have standing to bring his NYLL § 195(3) claim in federal court.

NYLL § 195(3) requires employers to provide employees a wage statement with every payment of wages that lists information including: the "dates of work covered by that payment of wages"; "rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other"; "gross wages"; number of regular and overtime hours worked; and "overtime rate or rates of pay."  NYLL § 195(3).  An employee who does not receive such a wage statement may recover $250.00 for "each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."  NYLL § 198(1-d).

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. 413, 426 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). It is not enough that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*  "Only those plaintiffs who have been *concretely harmed* by a

4

defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* Accordingly, where a statute entitles a person to certain information, a defendant's failure to provide that information, without more, does not establish standing. *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Instead, a plaintiff must allege "downstream consequences from failing to receive the required information" in order to show an Article III injury in fact. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 442). That means that a plaintiff "must show that he has an 'interest in using the information . . . beyond bringing [his] lawsuit." *Id.* (quoting *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

In line with the Supreme Court's decision in *TransUnion*, courts in this Circuit agree that plaintiffs must do more than allege a technical violation of NYLL § 195(3); they must also allege that the violation caused concrete, downstream consequences. *See, e.g.*, *Barbosa v. Phoenix Sutton Str. Inc.*, No. 22-CV-666, 2024 WL 1835320, at *2–3 (E.D.N.Y. Apr. 26, 2024); *Veloz v. MM Custom House Inc.*, No. 19-CV-852, 2024 WL 1282698, at *5–6 (E.D.N.Y. Mar. 26, 2024); *Lipstein v. 20X Hospitality LLC*, No. 22-CV-4812, 2023 WL 6124048, at *9–10 (S.D.N.Y. Sept. 19, 2023); *Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654, 2023 WL 2388728, at *8–9 (S.D.N.Y. Mar. 7, 2023). Courts differ, however, on what counts. Some courts have rejected as "not plausible" and only "hypothetical" allegations that an employer's violation of NYLL § 195(3) facilitated the employer's unlawful pay scheme by depriving the employee of the ability to contest the employer's pay calculation. *E.g.*, *Neor v. Acacia Network, Inc.*, No. 22-CV-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (claimed inability to contest hour calculations was not a plausible injury); *Shi v. TL & CG*, No. 19-CV-8502, 2022 WL 2669156, at *9 (S.D.N.Y. July 11, 2022) (claimed monetary harm was purely hypothetical); *see also Barbosa*, 2024 WL 1835320, at

\*3 (concluding that vague allegations that violations of NYLL § 195 facilitated other unlawful conduct was insufficient to confer standing). Others have found such allegations sufficient. *See e.g.*, *Veloz*, 2024 WL 1282698, at \*6; *Lipstein*, 2023 WL 6124048, at \*10; *Bueno v. Buzinover*, No. 22 Civ. 2216, 2023 WL 2387113, at \*3 (S.D.N.Y. Mar. 7, 2023).

Some courts that have found standing have relied on the idea that inaccurate wage statements prevent employees from identifying and correcting problems with their pay. In *Lipstein*, for example, the court analogized the plaintiff's allegations to one of the potential "downstream consequences" of an "alleged information deficit" that the Supreme Court identified in the credit-reporting context in *TransUnion*: a person's diminished ability to "correct erroneous information before it was sent to third parties." *Lipstein*, 2023 WL 6124048, at \*10. In the *Lipstein* court's view, the plaintiff's allegations there identified the same sort of downstream consequence: the employer's violation of NYLL § 195 hindered his ability to contest the wage and hour deficiencies to which his employer subjected him. *Id.*; *accord Veloz*, 2024 WL 1282698, at \*6 ("Plaintiffs have identified downstream consequences, as the deprivation of wage notices and wage statements prevented them from verifying their pay and deprived them of income until they consulted an attorney and initiated legal action."); *Bueno*, 2023 WL 2387113, at \*3 ("Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay."). Other courts, though, have held that it was enough for a plaintiff to allege that the employer's violation "resulted in the underpayment of wages" because "monetary injury is a concrete harm sufficient for purposes of Article III standing." *Mateer v. Peloton Interactive, Inc.*, No. 22 Civ. 740, 2022 WL 2751871, at \*2 (S.D.N.Y. July 14, 2022) (citing *TransUnion*, 594 U.S. at 425).

6

Plaintiff's theory of standing relies in part on allegations that the inaccurate wage statements he received prevented him from determining his proper overtime rate and from determining the amount he was underpaid, which, in turn, allowed Defendant to continue its unlawful pay scheme. ECF No. 20 ¶¶ 17–19, 70–72. He points to two errors in his wage statements: (1) an incorrect overtime rate and (2) the omission of the specific week in which he received overtime payments and bonuses. *Id.* ¶¶ 14–16. He also points to Defendant's practice of issuing a separate paystub for bonus payments. *Id.* ¶ 16. He argues that these defects in Defendant's wage statements led to four "downstream consequences": (1) being underpaid; (2) needing to contact attorneys; (3) filing this lawsuit; and (4) a delay in receiving his lawful wages. *See* ECF No. 23 at 8. Neither the alleged informational harm nor the alleged downstream consequences of it are enough to confer Article III standing.

To start, Plaintiff's allegations that the inaccurate wage statements allowed Defendant to continue its allegedly unlawful pay scheme do not give him standing under Article III. The Court disagrees with those courts that have relied on the theory that inaccurate wage statements prevented the employee from "contest[ing] the wage and hour deficiencies to which his employer subjected him." *Lipstein*, 2023 WL 6124048, at *10. Instead, Plaintiff's allegations of informational injury are more like those in *Harty*. There, the Second Circuit held that plaintiff's allegations that the lack of information related to disability accommodations on a hotel website deprived him of the ability "to make meaningful choices for travel." *Harty*, 28 F.4th at 444. The Second Circuit concluded that this did not amount to an informational injury that could support Article III standing. *Id.* Plaintiff's allegations here are similar in that he asserts that he would have made different choices—contesting his overtime pay sooner rather than later—had he received accurate wage statements. Although Plaintiff alleges that the inaccurate statements hampered his ability to

enforce his legal rights, this harm does not show an interest in using the information "beyond bringing [this] lawsuit." *Id.* Plaintiff's alleged informational injury, without more, is therefore not enough to confer standing under Article III.

Moreover, the Court remains unpersuaded that the one concrete injury Plaintiff has alleged—being underpaid—is fairly traceable to Defendant's alleged violation of the NYLL's wage statement requirement. Plaintiff's allegations do not demonstrate how the inaccurate wage statements resulted in an injury greater than Defendants' alleged overtime pay violations. *See Munoz v. Group US Mgmt. LLC*, No. 22-CV-4038, 2023 WL 5390204, at *6 (S.D.N.Y. Aug. 22, 2023). His monetary harm is therefore "better traced as an injury flowing from" Defendant's alleged violations of state and federal overtime requirements, not Defendant's inaccurate wage statements. *Jackson v. ProAmpac LLC*, No. 22-CV-3120, 2023 WL 6215324, at *4 (S.D.N.Y. Sept. 25, 2023) (citing *Quieju v. La Jugueria Inc.*, No. 23-CV-264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)). Although the allegedly inaccurate wage statements may have made it more difficult for Plaintiff to calculate his proper overtime rate, "it is not apparent—short of legal action—how an accurate [statement] would have dissuaded [Defendant] from" underpaying Plaintiff, and "thus prevented [his] monetary harm." *Id.* The Court therefore again concludes that, to the extent that Plaintiff alleges Defendant's inaccurate wage statements caused him to be underpaid, he has not established that this injury is fairly traceable to those inaccurate wage statements. His alleged monetary injury does not, therefore, confer Article III standing to bring his NYLL § 195(3) claim against Defendant.

For the foregoing reasons, Plaintiff has failed to establish that he has standing to bring his NYLL § 195(3) claim in federal court. The Court must therefore grant Defendant's motion to dismiss this claim without prejudice under Rule 12(b)(1). *See Harty*, 28 F.4th at 444–45.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF No. 21, is GRANTED. Plaintiff's NYLL § 195(3) claim is DISMISSED without prejudice. Defendant's motion for a stay is DENIED as moot.

In light of Defendant's pending motion for reconsideration, ECF No. 32, the Court extends, pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), Defendant's time to answer the amended complaint to twenty-one days after the Court issues a decision on the motion for reconsideration.

IT IS SO ORDERED.

Dated: May 24, 2024
       Rochester, New York

                                          HON. FRANK P. GERACI, JR.
                                          United States District Judge
                                          Western District of New York